Walter P. McCULLOUGH, Cottrell McCullough, Yvonne Cosey, and Marvin J. Cosey, Plaintiffs,

v.

The City of CHICAGO, Joe DeCicco, Individually and d/b/a Pt Trucking, Cherryl T. Thomas, Christopher J. Kozicki, and Ronald McDermott in their capacities as officials of the City of Chicago Department of Buildings, Defendants.

No. 96 C 6112.

United States District Court, N.D. Illinois, Eastern Division.

July 31, 1997.

Robert Lee Scott, James Couch & Associates, Chicago, IL, for Plaintiffs.

Gail A. Niemann, Patrick Walter Johnson, Peter J. Donoghue, City of Chicago Dept. of Law, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

The plaintiffs in this case claim that the various defendants were each responsible in part for the unwarranted demolition of one of their buildings and damage to another through the City's Fast Track Demolition program.[1] Count I of their second amended complaint is a claim under 42 U.S.C. § 1983 that the destruction of the house at 2902 West Fulton Street violated the procedural due process aspect of the Fourteenth Amendment. Count II is a similar claim for damage to 2900 West Fulton. Count III is a state law claim. Count IV seeks a declaration that the statute and city ordinance authorizing the Fast Track Demolition program are unconstitutional as written and applied. Count V alleges that the City has retaliated against the plaintiffs and seeks a restraining order preventing the prosecution of various housing-related actions currently pending in state court. The defendants have moved to dismiss all counts.

### Legal Standards

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989). When considering a motion to dismiss, the court views all facts alleged in the complaint, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). In short, the only question is "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992) (citations omitted).

### Relevant Facts

Walter and Cottrell McCullough own property located at 2900 West Fulton and 2902 West Fulton in Chicago. Each property had a multi-family residential building on it. One of the tenants in the 2900 building had contracted to purchase that building. As of May, 1996, the building at 2902 West Fulton was vacant, but the McCulloughs were in the process of negotiating with Marvin and Yvonne Cosey, who wished to buy the property. The McCulloughs and Coseys were rehabilitating the building together. During the McCulloughs' ownership of the building, it had never been cited for building code violations.

One section of an Illinois statute, 65 ILCS 5/11–31–1(e), provides that a municipality may use summary procedures to demolish, repair or enclose any building determined to be "open and vacant and an immediate and continuing hazard to the community." The procedures require that certain interested parties be notified in three ways—by a sign posted on the property, by a letter, and by publication of a notice in a newspaper—that unless steps are taken within 30 days to demolish, repair, or enclose the building, the City may do so. The property owner is then liable for the cost of the City's actions. The statute also provides that "[a] person objecting to the proposed actions of the corporate authorities may file his or her objection in an appropriate form in a court of competent jurisdiction." The statute has been enacted as part of the Chicago Municipal Code, at § 13–9–010, and is implemented in Chicago through the Fast Track Demolition program

---

1. The defendants note that defendants Thomas, Kozicki, and McDermott have been sued in their official capacities only, and that the City of Chicago is also a defendant. Because a suit against government officials in their official capacities is the equivalent of a suit against the government itself, the presence of these individuals adds nothing to the suit. *Schmidling v. City of Chicago*, 1 F.3d 494, 495 n. 1 (7th Cir.1993). For that reason, we hereby dismiss defendants Thomas, Kozicki, and McDermott from this action.

in the Department of Buildings. For the sake of convenience, both 65 ILCS 5/11–31–1(e) and Chicago Municipal Code § 13–9–010 are referred to herein as "the Ordinance."

Some time after May 10, 1996, the McCulloughs received a letter from the Chicago Building Department, informing them that the property at 2902 West Fulton had been found to be "vacant and open and ... an immediate and continuing hazard to the surrounding community." Am. Compl. Ex. E. Walter McCullough visited the Fast Track offices on May 17, 1996 and spoke to defendant McDermott, showing him photographs of 2902 West Fulton that showed that the building had been boarded up. McDermott reviewed and dated the photographs. During the next two months, 2902 West Fulton was broken into and vandalized more than once. Each time, the plaintiffs repaired and re-boarded the building after learning of the vandalism.

On June 15, 1996, the Coseys made the first payment to the McCulloughs for the purchase of 2902 West Fulton, and on July 2, 1996, they signed an agreement to purchase the property. Between July 2 and August 9, 1996, the Coseys were at the building almost continuously, repairing it and preparing it for occupancy of the first floor, which had already been rented out.

On August 9, 1996, defendant DeCicco, acting under the direction of defendants Thomas, Kozicki, and McDermott, and on behalf of the City, demolished the building at 2902 West Fulton. Marvin Cosey was on the property with a work crew, painting the first floor apartment, at the time. During the demolition, the building next door at 2900 West Fulton was damaged. The McCulloughs' lawyer later learned that the City had inspected 2902 West Fulton on July 18, 1996, and found that it was no longer boarded up. The McCulloughs had had no further indication that the City intended to demolish after Walter McCullough visited the Fast Track offices in May and spoke with Ron McDermott.

Since the demolition, the City has cited 2900 West Fulton for building violations that are the result of the damage done by the demolition contractor. In materials related to the citation, an inspector states that the building "appears to be vacant," although it is in fact occupied by tenants. The McCulloughs state that they fear that the building 2900 West Fulton is in danger of demolition through the Fast Track program. In addition to citations for 2900 West Fulton, the McCulloughs have also received recent building code citations for other buildings they own at 2809 West Fulton and 2809–11 West Washington in Chicago. The McCulloughs claim that these citations are baseless and were issued in retaliation for their suit against the City.

## Analysis

The City defendants have moved to dismiss all of the federal causes of action—Counts I, II, IV and V—for failure to state a claim, and ask that the state law claims in Count III be dismissed as well for lack of jurisdiction. We examine the federal counts first, in numerical order.

### Count I

■ Count I is a claim under 42 U.S.C. § 1983 that the demolition of 2902 West Fulton violated the plaintiffs' due process rights because it deprived them of their property without notice. The defendants raise a variety of arguments against this claim, none of which have merit.

■ First, the defendants argue that the plaintiffs' own allegations show that the requirements of procedural due process were complied with, because the McCulloughs received a letter warning them that the City intended to demolish and informing them that they had the right to file an objection in court if they wished. "The due process clause of the fourteenth amendment guarantees that a person be given notice and an opportunity to be heard at a meaningful time and in a meaningful manner before being deprived" of a property interest. *Cholewin v. City of Evanston*, 899 F.2d 687, 689 (7th Cir.1990). The issue here is whether the plaintiffs received such notice and opportunity before the demolition took place.

As the defendants correctly note, the plaintiffs themselves allege that they received the City's standard Fast Track notice

letter warning that: "If the building is not repaired, demolished or all accessible windows and doors are not securely boarded and kept boarded, and all garbage and debris removed from in and around the building within 30 days from the date of this notice, the City of Chicago will take action to eliminate the hazard." Second Am. Compl. Ex. E. By its very terms, however, this letter only notified the McCulloughs that the City would "take action to eliminate the hazard" if they did not either "repair[ ], demolish[ ] or" keep the building boarded up. The plaintiffs allege that they took steps first to board the building up, and then to repair it. These actions complied with the express commands of the notice letter. The letter also stated, "If you intend to board, repair or demolish this building, notification should be immediately forwarded to [the Fast Track office]." *Id.* Walter McCullough allegedly visited the Fast Track office and showed Ronald McDermott photographic evidence that he had boarded the building up. Having taken these steps, the plaintiffs had no reason to suppose that 2902 West Fulton was still subject to action by the City without further notice. All of the warnings of City action in the letter were contingent on the plaintiffs' failure to take certain steps. The plaintiffs took those steps. They received no notice that the City still intended to demolish. Thus, they received no notice that would have informed them that there would in fact be a deprivation.

The defendants make much of the fact that the plaintiffs do not allege that McDermott or anyone else from the City ever told them that their efforts at boarding and repair were sufficient to ensure that demolition would not occur. The absence of such allegations is far from fatal, however, as noted above, the language of the letter explicitly states that the City will take action only if the property owner does not "board, repair or demolish the building." The plaintiffs boarded up, and then repaired, the building. The letter does not state that the efforts to board or repair must pass City inspection, or that there are any other steps necessary to prevent further City action. Thus, the plaintiffs' failure to allege that their efforts received City approval or assurances is irrelevant.

The defendants also argue that the plaintiffs should have filed a court action if they really wanted to prevent demolition. The defendants note that the letter states that "[y]ou have the right to object to the City taking this action by filing legal action in a court of competent jurisdiction." *Id.* There is no dispute that the letter informed the plaintiffs that they had the right to file a lawsuit to prevent the City from taking action. But the letter also informed the plaintiffs that demolition or other City action would not occur unless they failed to board, demolish or repair the building themselves. The letter gave the plaintiffs no reason to think that legal action was the only way to avoid demolition.

The defendants next contend that the existence of adequate post-deprivation remedies at state law, such as actions for trespass, conversion, or inverse condemnation, satisfy the dictates of due process because the deprivation here must have been "random and unauthorized." *See Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The complaint does not contain any allegations supporting this contention. However, rather, when read as a whole, the complaint alleges that the demolition was the result of the City's normal Fast Track demolition procedures. The defendants' attempt to place their own gloss upon these allegations must fail. *See Rice v. Panchal,* 65 F.3d 637, 639 (7th Cir.1995) (citing the well-established rule that the plaintiffs are masters of their complaint). Nothing in the complaint indicates that the demolition of 2902 West Fulton was "random and unauthorized."

The defendants' final argument against Count I is that it does not allege one of the elements necessary for municipal liability under 42 U.S.C. § 1983—that the various City agents were acting pursuant to a municipal policy or custom when they caused the constitutional injury. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). This argument is incorrect. As noted above, the

complaint alleges that the demolition was the result of the City's standard Fast Track demolition procedures. In considering a motion to dismiss, the court draws all reasonable inferences in favor of the plaintiff. *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir.1991). It can be reasonably inferred that the City's standard Fast Track procedures constitute either an express municipal policy or an established municipal custom. Either way, the plaintiffs have properly pled all the elements for municipal liability under 42 U.S.C. § 1983.

Having found no fatal flaws in the plaintiffs' pleading of Count I, we deny the motion to dismiss as to Count I.

### Count II

■■ Count II, like Count I, is a claim under 42 U.S.C. § 1983 that the defendants violated the plaintiffs' procedural due process rights. The basis for Count If, however, is the damage done to 2900 West Fulton during the demolition of the building next door. The defendants raise many of the same arguments they directed toward Count I in attacking Count II. In addition, they argue that the allegations suggest that defendant DeCicco acted negligently, not intentionally. There is no governmental liability under 42 U.S.C. § 1983 for negligent acts. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). If the complaint alleges only that the demolition contractor was negligent in damaging 2900 West Fulton, Count II cannot survive.

The only allegations describing the occurrence of the damage to 2900 West Fulton are contained in paragraph 25: "On or about August 9, 1996, defendant DeCicco, at the direction of defendants Thomas, Kozicki, and McDermott and on behalf of the defendant City, did demolish the structure located on 2902 [West Fulton], and in the process of said demolition. did severely damage the structure located on 2900 [West Fulton]." Nothing in this paragraph describes the mental state of defendant DeCicco, *i.e.*, whether he acted negligently or intentionally in damaging the neighboring structure. On a motion to dismiss, we draw all reasonable inferences in favor of the plaintiff, and so we construe the complaint as alleging a non-negligent act. Thus, *Daniels* does not dispose of this claim.

Nevertheless, Count II must still fail, because the plaintiffs have not pled that 2900 West Fulton was damaged pursuant to a City policy or practice. While there is little dispute that the building at 2902 West Fulton was demolished pursuant to an established City policy, *i.e.*, the Fast Track demolition program, the plaintiffs have not described any municipal policy or custom of damaging nearby structures in the process of Fast Track demolitions. Count II thus fails to state a claim of municipal liability under 42 U.S.C. § 1983, and we dismiss it from the complaint insofar as it is directed toward the City. Count II remains viable as to defendant DeCicco.

### Count IV

■ Count IV states that the plaintiffs fear that the building at 2900 West Fulton may be subject to demolition under the Ordinance, and seeks a declaration that the Ordinance authorizing the program is invalid as written and as applied because it violates the Fourteenth Amendment. The defendants' initial argument against Count IV is that the Ordinance "is plainly constitutional." This court agrees that the Ordinance, construed correctly. is constitutional as written. *See McKenzie v. City of Chicago*, No. 97 C 284, —— F.Supp. —— [1997 WL 522788] (N.D.Ill. July 31, 1997) (opinion issued concurrently with this opinion). Nevertheless, the complaint here also clearly alleges an as-applied challenge to the statute. By its very nature, such a claim is not easily susceptible to dismissal for failure to state a claim: it requires development of the facts as to exactly *how* the Ordinance is applied. This as-applied claim survives the dismissal of the as-written claim.

The defendants also argue that the plaintiffs have no standing to seek declaratory relief because there is no substantial likelihood that they will suffer a deprivation under the Ordinance in the future. The defendants note that the complaint alleges that 2900 West Fulton is occupied, and argue that therefore it is not eligible for Fast Track demolition. (The Ordinance provides that a building must be vacant before it can be

demolished through Fast Track.) Thus, the defendants contend, the plaintiffs do not have standing to seek declaratory relief.

▰▰▰ In order to meet the requirements of standing, the plaintiff must show a "distinct and palpable injury" in fact, *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); that the injury is "fairly traceable" to the challenged conduct, *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); and that the exercise of the court's remedial powers is substantially likely to either redress or prevent the injury. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 79, 98 S.Ct. 2620, 2633, 57 L.Ed.2d 595 (1978). When the relief sought is prospective in nature, as is a declaratory judgment, the plaintiff must show that obtaining that relief will prevent future harm that he or she is otherwise likely to suffer. The threat of future harm must be "real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (internal quotations omitted).

Here, we assess the concreteness of the threatened harm by looking to the allegations of the complaint, which we take as true for purposes of a motion to dismiss. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (1996). The plaintiffs allege that the building at 2900 West Fulton is occupied, Second Am. Compl. ¶ 19, but that a City inspector has incorrectly noted that the property "appears to be vacant." *Id.* ¶ 32 & Ex. F. A Building Department inspector's finding that the building is vacant could render it eligible for Fast Track demolition. If the City relies on its own inspectors' reports, not the reports of property owners, in determining whether a building is vacant and therefore eligible for demolition through the Fast Track program, then the building at 2900 West Fulton may still be eligible for demolition.[2] On the other hand, if the building is to be placed into the Fast Track program, the Ordinance requires that

the plaintiffs be notified of that fact. They do not allege that they have received any Fast Track notices for the house at 2900 West Fulton. Lacking such allegations, the plaintiffs have not adequately alleged that the risk of eventual demolition is "real and immediate" enough to satisfy the dictates of *Lyons.* We therefore dismiss Count IV without prejudice to its renewal should the situation change.

*Count V*

Count V alleges that the City defendants have retaliated against the McCulloughs by filing baseless housing code enforcement actions against some of their other properties. The plaintiffs ask this court to issue a restraining order preventing these allegedly frivolous actions from proceeding further in state court, where they are presently pending. The defendants argue that such a remedy is not properly granted by this court, and they are right.

▰▰▰ In *Younger v. Harris,* 401 U.S. 37, 45–48, 91 S.Ct. 746, 751–53, 27 L.Ed.2d 669 (1971), the Supreme Court held that federal courts may not enjoin actions pending in state courts except in the rarest of circumstances. "Federal courts must presume that state courts are capable of establishing and administering judicial process consistent with the requirements of the federal constitution, and 'that state procedures will afford an adequate remedy.'" *Barichello v. McDonald,* 98 F.3d 948, 954–55 (7th Cir.1996) (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987)). Thus, a federal court should abstain from granting prospective relief that would affect cases pending in state court if three factors are present: (1) the state proceedings are on-going; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. All three of these factors are present here. Accordingly, under the doctrine of *Younger v.*

---

**2.** The defendants have not conceded that the complaint in this action is the statutory equivalent of filing an objection in a court of competent jurisdiction, which would be sufficient under the

Ordinance to prevent further City action until a court order of demolition is issued. Accordingly, we do not address that issue.

**1254**

*Harris* we abstain from deciding the claims raised in Count V.[3]

### Conclusion

The defendants' motion to dismiss is granted in part and denied in part. Defendants Thomas, Kozicki, and McDermott are dismissed from this action. Count II is dismissed as to the City of Chicago only; Counts IV and V are dismissed in their entirety, without prejudice to renewal if facts later warrant. The motion is denied as to the remaining claims.

---

3. The defendants also moved to dismiss Count III, the state law claim, on the grounds that if the other, federal, claims were dismissed this court could decline to exercise supplemental jurisdiction over Count III. As several federal claims remain standing, however, this argument is moot, and we retain jurisdiction over Count III.