Keith McKENZIE, Rev. Daniel Vinson, John and Beverly DeMarco, as beneficiaries of Marquette National Bank A/T/U/T/ 3422, Honeywood Development Corp., Robert Lewis, and Wilburn Richards, on behalf of themselves and others similarly situated, Plaintiffs,

v.

The CITY OF CHICAGO, a municipal corporation, Richard M. Daley, individually and as Mayor of the City of Chicago, Cherryl Thomas, individually and as Building Commissioner of the City of Chicago, Ron McDermott, individually and head of the Fast Track Demolition Program of the City of Chicago, and John Does 1–20, Defendants.

No. 97 C 284.

United States District Court,
N.D. Illinois,
Eastern Division.

July 31, 1997.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, for Plaintiffs.

Patrick Walter Johnson, Michael A. Forti, Peter J. Donoghue, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, Kenneth L. Schmetterer, Assistant Corporation Counsel, Litigation Division, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

### PROCEDURAL HISTORY AND BACKGROUND

Today, this Court issues a trilogy of decisions involving the City of Chicago's Fast Track Demolition program. Today's three opinions[1] bring our total opinions in this dispute to five, for consolidated litigation which has been pending less than seven months. Thus, this Court has decided that these related cases are appropriately entitled the "fast-track" litigation. The Court candidly admits that this is one of few lawsuits that has moved faster than this Court's preferences would dictate. After the *McKenzie* plaintiffs' amended complaint was consolidated with the related complaint in *McCullough v. City of Chicago*, 971 F.Supp. 1247 (1997), on March 7, 1997, this Court set a schedule to address the City defendants' planned motion to dismiss. However, before the City defendants filed their motion to dismiss on April 28, 1997, a motion which we resolve today[2] the *McKenzie* plaintiffs filed a motion for a preliminary injunction. After the parties failed to reach a standstill agreement to allow the Court time to resolve the City defendants' motion to dismiss, this Court decided to give the required priority to the resolution of the plaintiffs' requested injunctive relief. The Court therefore held an expedited evidentiary hearing on plaintiffs' motion for a preliminary injunction on April 2, 1997. That motion was fully briefed on April 9, 1997. Thereafter, on April 28, 1997, this Court orally granted the plaintiffs' motion for a temporary restraining order and subsequently issued a lengthy opinion on May 5, 1997 granting the plaintiffs' motion for preliminary injunction. *See McKenzie v. City of Chicago*, 964 F.Supp. 1183 (N.D.Ill. 1997).

During this same time period the Court was attempting to deal with the plaintiffs' motion for class certification which had been filed on March 24, 1997, and which became fully briefed, after discovery, on May 5, 1997—the same day the Court issued its initial preliminary injunction opinion. The Court planned to work on the motion for class certification, which is resolved in the body of this opinion, immediately after the release of the preliminary injunction opinion. Instead, the Court's energies and attention were diverted to an emergency motion by the defendants, which was filed on May 7, 1997, to reconsider or, alternatively, to stay this Court's preliminary injunction order pending appeal. Because the defendants supported this motion with new evidence filed for the first time in their reply brief, this "emergency" motion was not fully briefed until June 20, 1997. The motion was denied by this Court in a memorandum opinion dated June 24, 1997. *See McKenzie v. City of Chicago*, 968 F.Supp. 1268 (N.D.Ill.1997).

The Court's denial of the stay was appealed by the City defendants to the Seventh Circuit Court of Appeals, and in true adherence to the "fast track" nature of this litigation the Seventh Circuit summarily reversed this Court's preliminary injunction decision a

---

1. The three opinions are the instant opinion, which addresses the *McKenzie* plaintiffs' motion for class certification, the City defendants' motion to dismiss certain aspects of the *McKenzie* complaint, and a similar motion to dismiss in the related case, *McCullough v. City of Chicago*, 971 F.Supp. 1247 (1997). Each of these opinions summarizes only the facts relevant to each opinion.

2. This motion became fully briefed on June 12, 1997.

mere five days after the case was fully briefed on the limited issue of a potential appellate stay. *See McKenzie v. City of Chicago*, 118 F.3d 552 (7th Cir.1997).

With this procedural history as background, this opinion resolves the issue of class certification, which we previously imprudently deferred.

## RELEVANT FACTS

█ When evaluating a motion for class certification, the Court accepts all well-pled allegations made in support of certification as true. *Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (N.D.Ill.1993). The following facts are drawn largely from the allegations of the complaint, supplemented occasionally by the evidence presented to the Court to date.

In this action, the plaintiffs challenge the City of Chicago's practices and procedures for implementing a state statute, 65 ILCS 5/11–31–1(e), and a city ordinance, Chi. Mun. Code § 13–9–010 (collectively, "the Ordinance"), which permit summary demolition under certain circumstances. The first four counts of the Amended Complaint are brought on behalf of those who have already been injured by the City's enforcement of the Ordinance. Count I is a claim under 42 U.S.C. § 1983 for the deprivation of property without due process. Count II alleges violations of state and city law—specifically, the Ordinance. Counts III and IV are common law trespass and conversion claims, respectively. Each of these counts seeks compensatory and punitive damages, and injunctive relief. The last count, Count V, is brought on behalf of the above plaintiffs and also on behalf of those who may be injured in the future by the City's procedures and practices. Count V seeks a declaration that the Ordinance is invalid as written and implemented, and injunctive relief. The plaintiffs' motion to certify these two classes is presently before the Court.

The plaintiffs all own or owned property within the City of Chicago. All of them have either had the buildings on those properties demolished through the Fast Track Demolition program operated by the City of Chicago, or have buildings that are currently on the City's list for pending demolitions through the same program. The individual named defendants are all City employees in the Building Department or the Fast Track Demolition program. John Does 1 through 10 are the other, as-yet-unidentified employees who carry out the Fast Track program. John Does 11 through 20 are non-employees with whom the City contracts to carry out demolitions or other business in furtherance of the Fast Track program.

The Fast Track Demolition program is operated under the auspices of the Ordinance. Under the Ordinance, a building may be summarily demolished if it is "a residential building ... 2 stories or less in height ..., and the corporate official designated to be in charge of enforcing the municipality's building code determines that the building is open and vacant and an immediate and continuing hazard to the community in which the building is located." 65 ILCS 511–31–1(e). The Ordinance requires the municipality to provide three forms of notice of its intent to demolish the building: the posting of a sign not less than two feet by two feet on the building; the mailing of letters to all record owners, beneficial owners of land trusts, and lienholders of record, by certified mail, return receipt requested; and the publication for three consecutive days of a notice in the newspaper. These notices must state that the municipality intends to "demolish, repair, or enclose the building, or remove any garbage, debris, or other hazardous, noxious or unhealthy substances" unless the owner does so himself within 30 days. 65 ILCS 5/11–31–1(e); Chi. Mun.Code § 13–9–010. Thirty days after the date of the last notice, the municipality may proceed with demolition. Afterward, the municipality may file a lien against the property for costs and expenses related to the demolition. *Id.* The municipality may then move to foreclose on the property if necessary to enforce the lien.

The Ordinance provides that "[a] person objecting to the proposed actions of the corporate authorities may file his or her objection in an appropriate form in a court of competent jurisdiction." *Id.* Doing so and serving a copy of the complaint on the Mayor will stay the demolition until further court order. *Id.* Since a municipality may com-

mence demolition 30 days after issuing its three forms of notice, anyone wishing to stay the demolition must file and serve the objection within 30 days.

The plaintiffs charge that the City's procedures for administering the Fast Track program are faulty, and have led to the erroneous and/or unforewarned demolition of several of their properties. Each named plaintiff has had experience with the Fast Track program in some way.

The Reverend Daniel Vinson and his wife owned a greystone building at 4107 West Adams Street. In September 1995, he saw a sign on his building saying that the building would be demolished unless it were repaired. Rev. Vinson retained a Legal Aid attorney who telephoned and wrote to the Fast Track program officials. The officials agreed not to demolish the building without further notice. By November, 1996, Vinson had obtained a loan to repair and renovate the building, and was actively working on the building. The City demolished the building on November 6, 1996.

Keith McKenzie owned a home at 3834 West Filmore in Chicago. On September 9, 1996, he broke his ankle; he stayed with friends during his recovery. In late October, the City demolished his house without any notice. At the time of demolition, the home contained major appliances, including a furnace installed in 1990, and was fully furnished.

John and Beverly DeMarco were the beneficial owners of a house at 3748 South Wolcott, title to which was held by Marquette National Bank under a trust. The DeMarcos resided in the house during the summer, and spent the winter in Florida. Occasionally, while they were in Florida their adult children lived in the house. Their house was demolished by the City on December 27, 1996 without any notice. At the time of the demolition, the home contained appliances, furniture, and numerous personal effects.

Plaintiffs Honeywood Development Corporation, Robert Lewis and Wilburn Richards were permitted to intervene after the commencement of this suit. Honeywood is a company that rehabilitates and develops old housing in the City of Chicago. It operates by buying a property jointly with a co-inves-

tor, renovating the property, and then selling or renting it out. Honeywood often does not list itself as the owner of record; instead, the co-investor's name is often listed on title records. Several Honeywood properties in various stages of renovation have been demolished through the Fast Track program. Honeywood claims that all of these demolitions were without proper notice. In addition, several Honeywood properties have been identified by the City as eligible for future demolition under the Fast Track program. Robert Lewis is the co-investor on one such property, located at 6825 South Winchester.

Wilburn Richards also owns a house that is subject to future Fast Track demolition, at 1224 West 51st Street. Ever since being notified by the City that the building was subject to demolition, Richards has attempted to keep it completely boarded up in order to prevent demolition. Vandals periodically enter and re-open the house, however. At present the house is still eligible for Fast Track demolition.

The plaintiffs propose that two classes be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure. The first class, Class A, is defined as all persons: (1) who owned a home within the City of Chicago; (2) whose home was demolished by the City or its agents under the Fast Track program without adequate notice or judicial authorization; and (3) whose demolished home was not "in such imminent danger of structural collapse or self-destruction as to make judicial proceedings or other procedural due process hearing infeasible." Mot. for Class Cert. at 2. Class A is represented by named plaintiffs Keith McKenzie, Rev. Daniel Vinson, John and Beverly DeMarco, and Honeywood Development Corporation. The second class, Class B, is defined as "all persons whose homes are or may in the future be scheduled to be demolished on the 'Fast Track' program, but have not yet been demolished." Id. Class B is represented by plaintiffs Robert Lewis, Wilburn Richards, and, again, Honeywood Development Corporation.

## ANALYSIS

The plaintiffs bear the burden of establishing that certification is appropriate.

*Retired Chicago Police Assn. v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993). Rule 23 of the Federal Rules of Civil Procedure requires a two-step analysis to determine whether class certification is appropriate. First, a plaintiff must satisfy all four requirements of Rule 23(a), *i.e.*, numerosity, commonality, typicality, and adequacy of representation. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police*, 7 F.3d at 596. Second, the action must also satisfy one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977). The plaintiffs seek to certify Class A under Rule 23(b)(3), which requires that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). Class B allegedly satisfies the requirements of subsection (b)(3) and also (b)(2), which permits class actions where the defendant acts in the same manner toward all members of the class and where declaratory and injunctive relief are the remedies sought.

The plaintiffs contend that all the requirements of Rule 23(a) and (b) are met. The City claims that, as to Class A, none of Rule 23(a)'s requirements except commonality are met. As to Class B, the City argues that it founders on the rocks of adequacy of representation. It further argues that neither putative class can show predominance and superiority as required under Rule 23(b)(3). We address each of the requirements for Rule 23 certification in turn.

*Class A*

*Numerosity*

█ Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). In making this determination, "[t]he court is entitled to make common sense assumptions in order to support a finding of numerosity." *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D.Ill.1988). *See also In re VMS Securities Litigation*, 136 F.R.D. 466, 473 (N.D.Ill. 1991) ("A finding of numerosity may be supported by common sense assumptions. "). The plaintiffs are not required to specify the exact number of class members so long as a good faith estimate is provided. *Long v. Thornton Township High Sch. Dist.* 205, 82 F.R.D. 186, 189 (N.D.Ill.1979). However, the estimated numbers cannot be purely speculative. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989).

The plaintiffs allege that the City destroys over 1,000 buildings every year through the Fast Track program.[3] They also allege that the standard notices the City issues prior to the demolition are inadequate—both in the manner of issuance, because many property owners do not receive any notice, and in the notices' content, because the notices are misleading and confusing. The City has produced substantial evidence that the *manner* in which the City provides notice is generally "adequate" in the constitutional sense, despite the fact that several of the plaintiffs either did not receive timely notice or received inaccurate information. Class A is defined, in part, as those whose homes were demolished "without adequate notice." The City argues from this that there are very few members of Class A.

█ The flaw in this argument is that it assumes that the standard Fast Track notice is also constitutionally "adequate" with regard to its *content*. On the basis of the allegations of the complaint and the evidence submitted to date, it is far from clear that the content of the Fast Track notice affords adequate notice of the deprivation that is in fact likely to occur. Rather, the standard

---

**3.** The defendants have submitted testimony by Cherryl Thomas, the Chicago Building Commissioner, that only "a few hundred" of the demolitions the City orders every year are part of the Fast Track program. A motion for class certification does not address the merits of the case, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974), and thus we do not rule on the merits of this dispute.

notice appears potentially deficient in several ways, failing to apprise the property owner of the precise reasons for placing the property in the Fast Track program, the actions that will suffice to remove the property from the program, the nature of the City's review of property owners' actions, or that the City intends to demolish without further notice. *See McCullough v. City of Chicago,* 971 F.Supp. 1247 (N.D.Ill.1997); *McKenzie v. City of Chicago,* 973 F.Supp. 815 (N.D.Ill. 1997) (both related decisions issued contemporaneously with this decision). The notices also misleadingly suggest that simply repairing the property will avert demolition; the allegations and evidence to date demonstrate that rehabilitation alone frequently does not prevent demolition. *Id.* As both the allegations and the evidence to date suggests that the standard notices that the City issues under the Ordinance are inadequate, the members of putative Class A include all those whose properties have been demolished pursuant to Fast Track or the Ordinance, to whom the standard notices were issued. This group is sufficiently large to satisfy the rumerosity requirement of Rule 23(a).

### Commonality

■ Rule 23(a)(2) requires the presence of questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). The presence of some factual variations among class members' experiences will not defeat class certification. *Id.* at 1017. Plaintiffs need only show that there is "at least one question of law or fact common to the class" to satisfy the commonality requirement. *In re VMS Securities Litigation,* 136 F.R.D. 466, 473 (N.D.Ill.1991).

■ The defendants have not challenged the request to certify Class A on commonality grounds, and our independent review of the case leads us to conclude that commonality is present. A common nucleus of operative fact is typically found where the defendants have engaged in standardized conduct toward members of the proposed class.

*Chandler v. Southwest Jeep–Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D.Ill.1995) (citations omitted). As discussed above, the defendants here have indeed engaged in a standard course of conduct with respect to those who have had their properties demolished through Fast Track. Thus, we find that Class A meets the commonality requirement.

### Typicality

■ Rule 23(a)(3) requires that the representative's claims be typical of those of the class. " 'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.' " *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (quoting H. NEWBERG, CLASS ACTIONS ¶ 1115(b) (1977)). Because commonality and typicality are closely related, a finding of one often results in a finding of the other. Here, the plaintiffs' claims arise out of the same course of conduct as the claims of other class members, and all the claims are based on the same legal theories. Nevertheless, the defendants contend that the named plaintiffs are not typical of the class as a whole for several reasons.

First, the City states that the DeMarcos' house was demolished under its emergency police powers, not under Fast Track or the Ordinance. McDermott decl. ¶ 57. The plaintiffs respond that they alleged that the DeMarcos' house was demolished through the Fast Track program because that is what City employees told the DeMarcos immediately after the demolition. The parties agree that normal Fast Track procedures were not followed in the DeMarcos' case.

While we do not reach the merits of this dispute at this time, we have grave doubts about the suitability of the DeMarcos to represent other class members who, by definition, had their properties demolished through Fast Track. The plaintiffs seek to challenge the constitutionality of the procedures usually employed by the Fast Track program. Because the DeMarcos' claim is based on a demolition that is conceded to have involved procedures other than the usual Fast Track

procedures, their claims are not typical of the class.

The defendants also claim that the interests of plaintiffs Honeywood and McKenzie in their demolished properties were not properly recorded. The significance of this argument is not entirely clear. They do not appear to be asserting a challenge to these plaintiffs' standing—they do not claim that these plaintiffs lacked any interest in the properties. Perhaps they contend that the lack of a recorded interest is a substantive defense that would be unique to these parties. (The Fast Track letters are required to be mailed only to those whose interests appear on title and tax records.) The plaintiffs respond that despite the lack of recorded interests Honeywood at least should have received mailed notice in four cases, and the fact that it did not points to a deficiency in the Fast Track program's methods of providing notice. Moreover, in at least one case Honeywood did have an interest that appeared in the title and tax records, yet it still was not sent notice. Finally, the plaintiffs allege that neither McKenzie's property nor several of Honeywood's demolished properties were posted with Fast Track notices, as required under the Ordinance. Thus, these plaintiffs, the same as other class members, allegedly failed to receive adequate notice under the Ordinance. We find that Honeywood's and McKenzie's claims are not so fundamentally different from the other class members' claims that these plaintiffs cannot represent the other members.

Last, the defendants attack Reverend Vinson's claims as atypical because he received notice—paragraph 32 of the Amended Complaint alleges that a sign warning of possible demolition was posted on his building in September 1995. The plaintiffs point out, however, that the demolition did not occur until November 1996, over a year later, and that Rev. Vinson alleges that in the interim he was advised by Fast Track officials that they would not demolish without further notice. Rev. Vinson thus allegedly falls within the class definition of those who did not receive adequate notice prior to demolition. The defendants also suggest that the loss of his building in a tax sale and his subsequent recovery of it make Rev. Vinson atypical. As noted above, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members" *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). The tax sale is not relevant to the claim at issue here. "[S]imilarity of legal theory may control even in the face of differences of fact." *Id.* We find that, except as to the DeMarcos, the typicality requirement is met here.[4]

### Adequacy of Representation

■ Rule 23(a) lastly requires that the named plaintiff(s) will "fairly and adequately protect the interests of the class." FED. R.CIV.P. 23(a)(4). The adequacy requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, *Rosario,* 963 F.2d at 1018; (2) the named representative must have "a sufficient interest in the outcome to ensure vigorous advocacy," *Riordan v. Smith Barney,* 113 F.R.D. 60, 64 (N.D.Ill.1986); and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously, *Kriendler v. Chemical Waste Mgmt., Inc.,* 877 F.Supp. 1140, 1159 (N.D.Ill.1995).

■ The defendants contend that named plaintiffs McKenzie, Vinson, DeMarco and Honeywood will not adequately represent Class A. The first ground for their objection is that the named plaintiffs are atypical of the class and are susceptible to unique defenses. As we have considered and rejected (except as to the DeMarcos) this argument, we move on to their other grounds. Their second contention is that there are potential disputes between Honeywood and its co-investor, in the properties at issue here, because the co-investors might possibly blame Honeywood for failing to avert the demoli-

---

4. Our holding that the DeMarcos cannot serve as class representatives will have an effect on how their claims should be handled in the future. Plaintiffs' counsel should present their sugges- tions for how to deal with the DeMarcos' claims at the next status hearing, on the date set at the end of this opinion.

tions. The defendants present no evidence that any such disputes have developed to date, and this argument thus lies in the realm of pure speculation. Moreover, any such disputes would not affect the common claims of Honeywood and the co-investors against the defendants that are the subject of this lawsuit, or impair the ability of Honeywood to fairly and vigorously advance those interests of its co-investors that it shares. The defendants also suggest that the DeMarcos and McKenzie may not be sufficiently interested in the case "to ensure vigorous advocacy" because they did not submit affidavits or testify in the preliminary injunction hearing. We know of no precedent requiring every single named plaintiff to submit personal affidavits or testify at every important stage of litigation. We find that the named plaintiffs and their counsel will adequately represent the interest of the absent class members. We thus find that Class A meets all of the requirements of Rule 23(a), and turn our attention to Rule 23(b).

*Predominance and Superiority*

The plaintiffs submit that Class A satisfies Rule 23(b)(3), which requires that common questions of law or fact predominate over questions affecting only individual members, and that a class action is superior to other methods of adjudicating the controversy. FED. R. CIV. P. 23(b)(3). The defendants argue that the predominance prong is not met, because individual questions predominate over common ones in this action. Specifically, the defendants contend that the plaintiffs' as-applied challenge to the Ordinance would require "case-by-case" investigations into the facts surrounding notice (was notice actually received by the owners, were the ownership interests properly recorded,

etc.). The plaintiffs respond that such case-by-case analysis is not necessary because they challenge the constitutionality of the City's entire scheme for implementing the Ordinance. They point to proofs that would establish the alleged violations for the class as a whole.

 It is of course possible that factual variations exist within the class. Rule 23 does not ask whether individual questions exist, however, but rather whether the common questions predominate over any individual questions. "In considering whether common questions of law and fact predominate under Rule 23(b)(3), the common issues need not be dispositive of the entire litigation." *Riordan*, 113 F.R.D. at 65. The common allegations at issue, that there are systematic problems with the City's procedures in operating the Fast Track program, predominate over any individual factual differences.[5]

In addition to requiring that common issues predominate, Rule 23(b)(3) also requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. The Rule lists four factors courts should consider in making this determination: the interest of members of the class in individually controlling the prosecution of separate matters; whether other actions growing out of the same controversy have been filed involving the same parties; the desirability of concentrating all claims in one forum; and the manageability of any resulting class action. FED. R. CIV. P. 23(b)(3).

Here, these factors favor a class action. The defendants argue that consolidating the class members' claims will not serve judicial economy because there are so many individualized issues that must be resolved. But, as

---

**5.** The defendants also argue that this lawsuit is in the nature of a "mass tort," a type of suit that the Supreme Court has recently cautioned may sometimes be an inappropriate subject for class certification blue to predominance problems. *See Amchem Prods., Inc. v. Windsor*, —— U.S. ——, ——, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997). Not every tort-type action alleging numerous injured parties is a "mass tort," however. The Supreme Court spoke of "mass tort cases arising from a common cause or disaster," *id.*, such as personal injury cases based on product liability or an airplane crash. We find that

this case does not present the personal injury or wrongful-death issues that the Supreme Court appears to have had in mind in *Amchem*. *Id.* at —— ——, 117 S.Ct. at 2245–46 (citing the opinion of the Third Circuit in the same case, 83 F.3d 610, 633 (3d Cir.1996)). Rather, this case presents the type of statutory challenge involving standardized conduct that was approved for class actions in *Amchem*. *Id.* at ——, 117 S.Ct. at 2250 ("Predominance is ... readily met in certain cases alleging consumer or securities fraud or violation of the antitrust laws.").

noted above, we do not believe that the resolution of all these unique issues is necessary to the plaintiffs' cause of action, in which common issues predominate. Rather, the evidence that proves one plaintiff's claims will to a great extent also establish the other class members' claims. This is so even as to the plaintiffs' common law trespass and conversion claims: because the class is defined only to include those whose property was destroyed by the City, the elements of entry onto another's land, or assertion of control over the property of another, are already met classwide. The remaining issues of whether that entry and assertion were wrongful or without legal justification are also likely to be susceptible of classwide proof. Trying these and other common issues once, as opposed to multiple times, conserves scarce judicial resources.

The defendants correctly point out that the plaintiffs here have far more at stake than the class members in many class actions, in which the game would not be worth the candle for any single plaintiff and is only financially worthwhile if claims can be aggregated. Here, each plaintiff seeks the full value of the building demolished by the City, and thus their claims potentially offer considerable monetary reward. Their motivation to sue—even on their own—is presumably high. However, as the plaintiffs point out, that motivation may very well be overcome by a lack of present financial resources to bring suit in every case. Several of the named plaintiffs appear to lack substantial funds for litigation, and nothing indicates that other class members are not in the same boat.

■ For the reasons listed above, a class action is superior to other methods of adjudicating the controversy. Because all four prongs of Rule 23(a), and the predominance and superiority requirement; of Rule 23(b)(3), are met for Class A, we find that Class A should be certified as requested.

## Class B

### Rule 23(a) Requirements

■ Class B is to consist of those whose properties are scheduled or eligible for de-

molition under the Ordinance and the Fast Track program in the future. The only prong of Rule 23(a) that the defendants claim is not present here is adequacy of representation. We agree that numerosity, commonality, and typicality are present here, and turn our attention to the last requirement, adequacy of representation.

The named plaintiffs for Class B are Robert Lewis, Honeywood Development Corporation, and Wilburn Richards. The defendants first attack the ability of Wilburn Richards to represent absent class members because he has admitted that he received the mailed notice from the City warning him that his property could be demolished. As we have already discussed, however, this fact alone does not mean that the notice Richards received was necessarily adequate in the constitutional sense. Because the content of the notices, not just the manner in which they were issued, has been challenged, the mere fact that he got a notice does not do away with his stake in this litigation or impair his ability to represent others. Richards is also particularly representative of an alleged subgroup of the class, those who have attempted to board up their houses after receiving a Fast Track notice, but whose buildings nevertheless remain eligible for demolition. He does not appear to be an inadequate representative for the class.

The defendants argue that Robert Lewis is not a proper representative because he has never seen his property and does not himself maintain or manage the property, relying instead on his co-investor, Honeywood, to perform those tasks for him. Nothing indicates that Lewis is any less interested in his whether or not his investment is demolished, however, or that he is unlikely to perform adequately the job of class representation. Indeed, the named plaintiffs have participated vigorously in the advocacy of this case to date. We find that the adequacy of representation element, as the other elements of Rule 23(a), is met for Class B.[6]

### Rule 23(b) Requirements

The plaintiffs initially sought to certify Class B under the same predominance-and-

---

**6.** The defendants make two other arguments that

do not merit extended discussion. First, they

superiority standard of Rule 23(b)(3) as Class A. The defendants object to certification under this standard, charging that the class lacks the definiteness required for 23(b)(3) certification, in which the named plaintiffs must notify each class member of the existence of the class action and provide them with the opportunity to opt out of the class. FED. R. CIV. P. 23(c)(2). We agree that managing Class B in a responsible manner could be difficult in this case. *See Amchem Prods., Inc. v. Windsor*, —— U.S. ——, —— – ——, 117 S.Ct. 2231, 2251–52, 138 L.Ed.2d 689 (1997) ("[i]mpediments to the provision of proper notice" to class members who have not yet been harmed or identified can disqualify a class from certification under Rule 23(b)(3)). If this were the only option, we might well decline to certify Class B. However, the plaintiffs have also cited subsection (b)(2) in support of their bid to certify Class B.

▇▇ Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). In this case, the only claim pursued by Class B is Count V, which seeks a declaration that the defendants' actions in implementing the Ordinance and operating the Fast Track program are unconstitutional, and a corresponding injunction prohibiting the defendants from taking those actions in the future. This claim is appropriate for certification under Rule 23(b)(2), which was "primarily designed for injunctive and declaratory relief against a defendant who has injured the class as a whole." *See Baker v. Runyon*, 1997 WL 232606, at *4 (N.D.Ill.

May 2, 1997) (citing cases). A class including members who are likely to suffer some harm in the future can be certified under Rule 23(b)(2) where the only relief sought is declaratory and injunctive. *See Isby v. Bayh*, 75 F.3d 1191, 1194 (7th Cir.1996) (class certified under Rule 23(b)(2) of those "who, as of May 4 1992, and thereafter in the future, are confined or will be confined in the Maximum Control Coraplex in Westville, Indiana"). We thus find that Class B meets the requirements of Rule 23(b)(2) as well as 23(a), and certify the class.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for certification is granted. Class A shall consist of all those: (1) who owned a home within the City of Chicago; (2) whose home was demolished by the City or its agents under the Fast Track program without adequate notice or judicial authorization; and (3) whose demolished home was not "in such imminent danger of structural collapse or self-destruction as to make judicial proceedings or other procedural due process hearing infeasible." Class B shall consist of all persons whose homes have not yet been demolished through the Fast Track program, but are or may in the future be scheduled to be so demolished. The parties shall appear in court for a status hearing on August 27, 1997 at 9:15 a.m. to discuss the future progress of this litigation.

raise the same arguments already made about Honeywood: Honeywood was not the record owner of many of the properties in which it holds a financial interest, and Honeywood could possibly be sued by some of its co-investors if those investors were not pleased with Honeywood's management of the properties. We reject these arguments here for the same reasons stated above. Second, the defendants argue that because Robert Lewis has filed suit against them (in this lawsuit), the demolition of his property is stayed under the Ordinance until further court order, and thus he cannot represent class members who are still subject to summary demolition. This argument is very neat: if the mere act of filing suit against the City made one ineligible to seek injunctive relief on the behalf of others, it would prevent *any* named plaintiff, not just Lewis, from representing Class B now or at any time in the future. The City could never be brought to account for any possible constitutional violations related to the Ordinance. We find that this argument raises the classic exception to the mootness doctrine—"capable of repetition, yet evading review"—and reject it as a challenge to adequacy of representation.