Pamela Jean **TYLKA,** individually and on behalf of all others similarly situated, Plaintiffs,

v.

**GERBER PRODUCTS CO.,** a Michigan corporation, Defendant.

No. 96 C 1647.

United States District Court, N.D. Illinois, Eastern Division.

March 3, 1998.

Michael Jerry Freed, Michael B. Hyman, Carol V. Gilden, Much, Shelist, Freed, Deneberg & Ament, P.C., Chicago, IL, Marvin Alan Miller, Kenneth A. Wexler, Miller, Faucher, Cafferty & Wexler, L.L.P., Chicago, IL, Charles Robert Watkins, Robert Jerald Emanuel, Susman, Buehler & Watkins, Chicago, IL, Alan M. Goldberg, Ben Barnow, Barnow and Goldberg, P.C., Chicago, IL, Lee Squitieri, Abbey Gardy & Squitieri, L.L.P., New York City, Jonathan M. Plasse, Goodkind, Labaton, Rudoff & Sucharow, New York City, Roberta Liebenberg, Natalie A. Finkelman, Mager, Liebenberg & White, Philadelphia, PA, Larry Daniel Drury, Larry D. Drury, Ltd., Chicago, IL, for Pamela Jean Tylka.

Kenneth A. Wexler, Miller, Faucher, Cafferty & Wexler, L.L.P., Roberta Liebenberg, Natalie A. Finkelman, Mager, Liebenberg & White, Philadelphia, PA, for Toni Cainkar, Celine White, H. Joshua Chaet, Cheryl Keller, Barbara F. Berg, Jeanette Deleon.

Michael S. Poulos, Suzanne Robinson, Rudnick & Wolfe, Chicago, IL, Ted C. Tow, Matkov, Salzman, Madoff & Gunn, Chicago, IL, Wendy Lee Toolin, Dickinson Wright—Illinois, Chicago, IL, Lawrence G. Campbell, Dickinson, Wright P.L.L.C., Detroit, MI, for defendant.

### OPINION AND ORDER

NORGLE, District Judge.

Before the court is Plaintiffs' Motion for Class Certification. For the following reasons, Plaintiffs' motion is granted in part and denied in part.

## I. BACKGROUND

In the Spring of 1995, the Center for Science in the Public Interest ("CSPI"), an advocacy group that opposes, among other things, the use of starches and sugars in food products, issued a report that was highly critical of the baby food products manufactured and distributed by Defendant Gerber Products Company ("Gerber"). CSPI then requested that the Food and Drug Administration ("FDA") take regulatory action against Gerber. However, after an investigation, the FDA declined to act. Undaunted, CSPI filed a subsequent and similar complaint with the Federal Trade Commission ("FTC") in February 1996, but met the same fate when the FTC declined to pursue the matter.

Therefore, on March 22, 1996, Plaintiffs Pamela Jean Tylka, Toni Cainkar, H. Joshua Chaet, Cheryl Keller, Barbara F. Berg, and Jeanette Deleon, individually and on behalf of all other similarly situated consumers ("Plaintiffs") filed a complaint against Gerber.[1] An amended complaint was filed on April 28, 1997. In essence, Plaintiffs' amended complaint alleges that (1) Gerber adulterated its second-stage and third-stage baby food products with water, sugar, starches, or a combination thereof, and (2) used misleading advertising to promote its adulterated goods. Plaintiffs assert that Gerber's marketing campaign reached a national audience and was fraught with deceptive or inaccurate statements about the quality of Gerber's baby food. For example, Plaintiffs claim that Gerber consistently represented its goods as the best that money can buy, the most nutritious, and trusted by mothers who only want the best. Am. Compl. at 11–16. Plaintiffs also attack Gerber's claims that its products are "pure and natural" and that "four out of five pediatricians recommend Gerber." *Id.* at 12.

---

1. Although the complaint was originally filed in the Circuit Court of Cook County, Illinois, it was successfully removed to this court. *See Tylka v. Gerber Products Co.,* No. 96 C 1647, 1996 WL 341441 (N.D.Ill. June 18, 1996).

Plaintiffs bring Count I of the amended complaint pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* Count II pleads an Illinois common law fraud cause of action. Although the amended complaint only contains two counts, Plaintiffs seek redress under each state's statutory equivalent of the ICFA and each state's common law prohibition against fraud. Along with compensatory damages, Plaintiffs seek injunctive relief which enjoins further deceptive advertising and requires Gerber "to disclose accurate information regarding its products to Class members." Am. Compl. at 24.

Plaintiffs now move for an order certifying a class of plaintiffs defined as follows: "All persons in the United States who have purchased or continue to purchase Gerber's second-stage and third-stage baby food products adulterated with water, sugar and/or starches, excluding Gerber and any person affiliated with Gerber for the period of February 16, 1993 to date." *Id.* at 4.

## II. DISCUSSION

Federal Rule of Civil Procedure 23(a) provides that members of a class may sue as representative parties on behalf of all others similarly situated if

> (1) the class is so numerous that joinder of all members is impracticable ["numerosity"], (2) there are questions of law or fact common to the class ["commonality"], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy"].

Fed.R.Civ.P. 23(a). The burden of establishing these prerequisites falls on the party seeking certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993). The failure to satisfy any of these four elements is fatal to a certification motion. *Id.*

■ If the numerosity, commonality, typicality, and adequacy prerequisites of Rule 23(a) are satisfied, the court must take the additional step of determining whether the action is maintainable under any of the Rule 23(b) subsections. *Amchem Prods., Inc. v. Windsor*, —— U.S. ——, ——, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). Here, Plaintiffs seek certification under both 23(b)(2) and 23(b)(3). Rule 23(b)(2) allows class actions for injunctive relief when "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Under Rule 23(b)(3), the court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Because the ultimate decision to certify a class sometimes requires a complex analysis of fact and law delicately balanced against the pragmatic considerations of judicial economy, the "district court has broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir.1997).

### 1. Commonality and Predominance

As noted above, courts customarily address the four prerequisites of Rule 23(a) before turning to the dictates of Rule 23(b). However, the parties in this case have presented the commonality of fact or law requirement in 23(a)(2) together with the 23(b)(3) requirement that these common issues predominate over individual issues of fact or law. Additionally, because the court's discussion of commonality and predominance assist in disposing of the other Rule 23(a) class certification elements, the court begins its analysis there.

#### Commonality

■ Rule 23(a)(2) requires that class members share common questions of fact or law. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992). If "at least one question of law or fact [are] common to the class," then commonality is satisfied. *Allen v. City of Chicago*, 828 F.Supp. 543, 551 (N.D.Ill.1993). Further, where a defendant directs standardized conduct toward the class, commonality is typical-

ly found. *Moore v. Simpson,* No. 96 C 2971, 1997 WL 570769, at *3 (N.D.Ill. Sept. 10, 1997) (citations omitted); *Keele v. Wexler,* No. 95 C 3483, 1996 WL 124452, at *4 (N.D.Ill. March 19, 1996).

■ Here, Plaintiffs allege that "[t]his litigation is about Gerber's common scheme to deceive and defraud purchasers of baby food." Pls.' Reply at 4. Thus, Gerber's standardized conduct regarding adulteration and advertising is the crux of this litigation. Indeed, the success of Plaintiffs' case hinges, in large measure, on whether Gerber deliberately misrepresented the contents of its second and third-stage baby food products. Gerber does not directly address this point. Instead, Gerber takes a different tack and argues that no common nucleus of facts exists where consumers are subject to different ads run in a variety of mediums, at different times. However, it is well settled that the presence of some factual variations among class members' experiences will not defeat class certification. *Rosario,* 963 F.2d at 1017. Moreover, that Gerber ran various ads on television and in print, does not alter Plaintiffs' central claim that the advertisements were designed to deceive consumers. Accordingly, the court finds that Plaintiffs' allegations satisfy Rule 23(a)(2).

*Predominance of Common Issues of Law Under 23(b)(3)*

Plaintiffs seek certification of a nationwide class pursuant to the ICFA and "similar consumer fraud statutes in other states." Am. Compl. at 22. In addition, Plaintiffs seek to invoke the common law fraud protections of the several states. In response, Gerber argues that individual issues of law will predominate if the court certifies a nationwide class possibly involving the separate application of 50 consumer fraud statutes and 50 common law fraud torts. The court agrees.

■ In relevant part, Rule 23(B)(3)(D) provides:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> . . .
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include ... (D) the difficulties likely to be encountered in the management of a class action.

The burden of demonstrating manageability is on the Plaintiffs. *Retired Chicago Police Ass'n,* 7 F.3d at 596; *Balderos v. Illinois Vehicle Premium Fin. Co.,* No. 96 C 8050, 1997 WL 627650, at *2 (N.D.Ill. Oct. 2, 1997) ("A plaintiff seeking class certification bears the burden of proving that the action satisfies ... one of the sections of Rule 23(b).")

In *In Re Rhone–Poulenc Rorer Inc.,* 51 F.3d 1293, 1300 (7th Cir.1995), a group of hemophiliacs sought to certify a nationwide class of plaintiffs that were allegedly infected with the HIV virus by the defendant's pharmaceuticals. Although the court denied class certification primarily on the grounds that merging the negligence standards of the 50 states would result in an "Esperanto" instruction,[2] the court strongly expressed its concerns about managing the nuances of 50 separate negligence laws. *Id.* The court stated, "nuance[s] can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts." *Id.*

---

**2.** Relying on *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Judge Posner wrote:

> If one instruction on negligence will serve to instruct the jury on the legal standard of every state of the United States applicable to a novel claim ... one wonders what the Supreme Court thought it was doing in the Erie case

when it held that it was unconstitutional for federal courts in diversity cases to apply general common law rather than the common law of the state whose law would apply if the case were being tried in state rather than federal court.

*In Re Rhone–Poulenc Rorer Inc.,* 51 F.3d at 1300.

Here, Plaintiffs fail to meet their burden and demonstrate that the nuances of 50 consumer fraud statutes and 50 common laws are manageable. Although the Plaintiffs repeatedly state in conclusory fashion that the "consumer fraud laws reduce to general and manageable patterns," no sincere effort is made by Plaintiffs to create such an amalgam.[3] Indeed, it is not until Plaintiffs' surre-joinder that a single paragraph is offered describing four subclasses under which the instant litigation could be managed. This "proffer" seems overly simplistic in light of the nuances and differences presented by the consumer fraud statutes. Indeed, a brief review of the applicable statutes reveals not only nuances, but differing standards of proof, procedure, substance, and remedies. In short, the court is not satisfied that Plaintiffs' have met their burden under Rule 23(b)(3). Therefore, individual issues of law predominate which preclude certification of a nationwide class seeking redress under the various states' consumer fraud statutes and common law fraud causes of action.

Nevertheless, the court is mindful that a failure to certify a class will most likely render individual actions in this case noneconomical for Plaintiffs to pursue. *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir.1941) (cautioning against "closing the door of justice to small claimants"). Therefore, in an exercise of its broad discretionary powers, *Mira*, 107 F.3d at 474, the court certifies the following class: all representative and putative class members who may properly avail themselves of the ICFA and Illinois common law fraud. This discretionary limitation on the breadth of the class is supported by the Seventh Circuit and other district courts in the Northern District of Illinois. *Mace v. Van Ru Credit Corp.*, 109

F.3d 338, 341 (7th Cir.1997) ("[W]e know of no authority requiring the participation of the broadest possible class. On the contrary, the class requirements found in the Federal Rules of Civil Procedure encourage rather specific and limited classes."); *Shvartsman v. Callahan*, No. 97 C 5229, 1997 WL 573404, *16 (N.D.Ill. Sept. 11, 1997) (limiting nationwide class to the Seventh Circuit); *Rembert v. Sheahan*, No. 92 C 0067, 1992 WL 253185, *4–5 (N.D.Ill. Sept. 29, 1992) (only class members seeking prospective relief certified as a class).[4]

*Predominance of Common Issues of Fact Under Rule 23(b)(3)*

Gerber argues in the alternative that despite the existence of commonality, individual fact issues among the Plaintiffs predominate. Specifically, Gerber claims that materiality, reliance, and causation are fact issues which each Plaintiff must separately prove to establish Gerber's liability under the ICFA and Illinois common law. However, Gerber's effort to shift the focus of our inquiry to individual class Plaintiffs' actions and subjective beliefs is misplaced and runs contrary to established law.

First, the ICFA employs an objective standard when determining the materiality of an alleged misrepresentation. *Cirone–Shadow v. Union Nissan of Waukegan*, 955 F.Supp. 938, 944 (N.D.Ill.1997) ("The standard for materiality under the ICFA is an objective standard."); *Cobb v. Monarch Fin. Corp.*, No. 95 C 1007, 1996 WL 308279, *6 (N.D.Ill. June 6, 1996). Hence, "all a plaintiff need prove to establish a violation of the [ICFA] is: (1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involv-

3. The court does not find Plaintiffs' exhibits submitted in support of this argument persuasive. Exhibits D and F, merely incorporated by reference in the pleadings, are densely worded articles, graphs, and charts, well in excess of 100 pages. Plaintiffs should not expect the court to ferret through, disseminate, and craft manageable schemes from these exhibits when that burden clearly rests with Plaintiffs. Exhibit E simply refutes Gerber's arguments and does nothing to support Plaintiffs' own assertions of manageability.

4. Plaintiffs claim that failure to certify the nationwide class would "leave the members of the class without a remedy." Pls.' Reply at 23. The court disagrees. Nothing in this opinion prevents those class members lacking standing under the ICFA or Illinois common law from seeking certification in other jurisdictions. As evidenced by the voluminous pleadings and exhibits, there is no shortage of consumer fraud laws in other states.

ing trade or commerce." *Siegel,* 180 Ill.Dec. at 304, 607 N.E.2d at 198. Therefore, it is irrelevant whether a plaintiff believes a misrepresentation is material. *Cirone–Shadow,* 955 F.Supp. at 944 ("The conduct of the individual plaintiff is not pertinent.")[5]

Second, proof of actual reliance on the part of each Plaintiff is not required under the ICFA. *L.R.J. Ryan v. Wersi Electronic GmbH and Co.,* 59 F.3d 52, 53 (7th Cir.1995) ("Illinois law does not require a plaintiff to prove actual reliance.") Rather, the finder of fact must merely determine whether it was the intent of the defendant "that plaintiff rely on the deception." *Siegel v. Levy Org. Dev. Co., Inc.,* 153 Ill.2d 534, 180 Ill.Dec. 300, 304, 607 N.E.2d 194, 198 (1992). Therefore, proof that each Plaintiff relied on Gerber's advertisements is not required and is not an obstacle to class certification. *See e.g., Peterson v. H & R Block Tax Servs., Inc.,* 174 F.R.D. 78, 84 (N.D.Ill.1997) (certifying class while rejecting assertion that ICFA requires actual reliance by plaintiff); *Hill v. Gateway 2000, Inc.,* No. 96 C 4086, 1996 WL 650631, at *12–13 (N.D.Ill. Nov. 7, 1996).

Third, "it is well established that individual issues of reliance do not thwart class actions of common law fraud claims." *Sparano v. Southland Corp.,* No. 94 C 2098, 1996 WL 681273, at *3 (N.D.Ill.1996); *Arenson v. Whitehall Convalescent and Nursing Home. Inc.,* 164 F.R.D. 659, 666 (N.D.Ill.1996) (certifying class despite individualized issues of reliance in common law fraud claims); *Alexander v. Centrafarm Group, N.V.,* 124 F.R.D. 178, 186 (N.D.Ill.1988) (same). The court in *Barkman v. Wabash,* 674 F.Supp. 623, 635 (N.D.Ill.1987), reached this same conclusion and reasoned:

> [T]he fraud alleged in this case is based on conduct of defendants which was uniform as to all class members. No individual representations were made, nor were there any separate communications between defendants and individual class members. . . . All class members were faced with the

same allegedly fraudulent statements . . . . Thus . . . issues of personal reliance may be reserved for a determination of damages, if plaintiff proves his case.

Here, as in *Barkman,* the class members were subject to standardized conduct. Gerber's ads, although varied according to geography and medium, allegedly carried the same message: misrepresentation of the quality and ingredients in Gerber's second and third-stage baby food products. Further, Gerber does not argue that the class Plaintiffs relied on any individual representations or communications. All allegedly fraudulent representations were conveyed through widely circulated and generalized advertisements. If some class members incurred more damage than others as a result of their actual reliance, then those issues can be resolved when damages are determined. *Sparano,* 1996 WL 681273, at *3 (resolving any individualized issues of reliance in the damage phase). Accordingly, the court concludes that common issues of fact predominate.

### 2. *Numerosity*

■ Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Courts are entitled to make common sense assumptions in order to support a finding of numerosity. *Nat'l Org. for Women, Inc. v. Scheidler,* 172 F.R.D. 351, 359 (N.D.Ill.1997). Furthermore, "plaintiffs are not required to specify the exact number of class members so long as a good faith estimate is provided." *McKenzie v. City of Chicago,* 175 F.R.D. 280, 285 (N.D.Ill.1997).

The Plaintiffs assert that "Gerber sold more than 1.2 billion units of baby food per year during the Class Period. This accounted for approximately 70% of the annual $1.25 billion industry, making Gerber the largest manufacturer of baby food products." Pls.' Br. at 2. Indeed, Gerber does not contest the numerosity issue and freely admits that

---

5. Because proximate cause under the ICFA is inextricably tied to the "character" of the material misrepresentation, *Martin v. Heinold Commodities, Inc.,* 163 Ill.2d 33, 205 Ill.Dec. 443, 457, 643 N.E.2d 734, 748 (1994), individualized proof of causation cannot be an impediment to class

certification if materiality is not. *Weiss v. Winner's Circle of Chicago, Inc.,* No. 91 C 2780, 1992 WL 220686, at *4 (N.D.Ill. Sept. 3, 1992) (individualized issues of causation do not preclude class certification).

"[s]ince there are approximately 4 million babies eating baby food at any one time, many more than four million will have eaten baby food during the 3–year class period alleged." Def.'s Resp. at 19 n. 21. Because Gerber further admits that "most parents try Gerber at some point," the court finds that the class is sufficiently numerous and that joinder would be impracticable. *Id.* at 15 n. 14.

### 3. *Typicality*

■ Typicality requires the named Plaintiffs to demonstrate that their claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992) (*quoting De La Fuente v. Stokely–Van Camp. Inc.,* 713 F.2d 225, 232 (7th Cir.1983)). The typicality requirement is not particularly strict and may be satisfied even where there are some factual dissimilarities between the claim of the class representative and the claims of other class members. *Retired Chicago Police Ass'n,* 7 F.3d at 597.

Plaintiffs advance two legal theories in their complaint, common law fraud and violations of the ICFA, on behalf of themselves and all those similarly situated. Gerber argues that the typicality requirement is not met because members of the purported class saw different ads at different times and bought Gerber products for different reasons.

The Seventh Circuit has rejected the type of argument Gerber advances. In *De La Fuente,* 713 F.2d at 232–33, plaintiffs sought to certify a class of migrant farm workers alleging unlawful recruitment and labor practices. In finding that the plaintiffs' claims were sufficiently typical, the court refused "to require that each member of a class suffer precisely the same injury as the named class representatives" because "[a]ll members of the class were subject to the same allegedly unlawful practices." *Id.* The court also stated that "[w]e have not interpreted Rule 23(a)(3) to require that each member of a class suffer precisely the same

injury as the named class representatives." *Id.*

The court in *Rohlfing v. Manor Care, Inc.,* 172 F.R.D. 330, 335 (N.D.Ill.1997), rejected a similar argument. In *Rohlfing,* the defendants argued that plaintiffs' fraud claims were not typical of the class because an individualized inquiry would be required to determine what oral representations were made to the plaintiffs regarding pharmaceutical purchases. *Id.* The court stated that "[t]his argument is simply wrong: the plaintiffs' fraud claims are based upon identical written misrepresentations and omissions made by [the defendant] .... Any fraudulent statements made to [the class representative] were also made to all other class members." *Id.* Thus, the court found that plaintiffs' claims were typical. *Id.*

■ Like the plaintiffs in *Rohlfing* and *De La Fuente,* the Plaintiffs in this case were supposedly subjected to the same allegedly fraudulent practices, thus making their claims typical of those in the putative class. They all supposedly purchased Gerber products which were adulterated. It does not matter that different second and third-stage baby food products were purchased or that they bought for a variety of reasons. What is important is that all the products allegedly contained the fraudulent misrepresentation of being adulterated with water, sugar, starches, or a combination thereof.

The same may be said with respect to the advertisements. While it is true that some of the Plaintiffs saw different ads or may not have seen an ad at all, the typicality requirement focuses on what misrepresentations were allegedly made in the ads. Any supposed misrepresentations made to the class representatives were also made to the putative class. *Rohlfing,* 172 F.R.D. at 335. Therefore, all class members would have the same claims, namely that Gerber allegedly adulterated their baby food products and made false representations in their advertisements. As the court previously stated in *Ramirez v. NutraSweet Co.,* No. 95 C 130, 1996 WL 529413, at *2 (N.D.Ill.1996), "[t]here may be some minuscule factual differences, but it is clear from the Complaint, to which this court must look solely, that the

claims arise from the same events, practices, and courses of conduct taken by the Defendant." Since the purported class would be alleging the same claims based on the same legal theories, the court finds that the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy of Representation

■ The "adequacy of representation [under Rule 23(a)(4)] is composed of two parts: 'the adequacy of the named plaintiff's counsel and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members ." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (*quoting Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986)).

Here, Gerber does not challenge the adequacy of counsel nor its collective ability to ensure the protection of divergent interests among Plaintiffs. It appears that there is no meritorious grounds upon which to contest either prong of Rule 23(a)(4). First, Plaintiffs' counsel avers that they have "considerable experience in class actions and complex litigation." [6] Second, in light of the court's rulings regarding commonality and typicality, this case does not appear to be the type where the class members will be beleaguered by dissension in the ranks. Therefore, the court finds that Plaintiffs satisfy 23(a)(4).

### Certification Under Rule 23(b)(2)

Having found the four prerequisites of 23(a), the court now considers whether to certify the class pursuant to Rule 23(b)(2), which provides in relevant part: "An action may be maintained as a class action if ... (2) the party opposing the class has acted or refused to act on grounds generally applica-

ble to the class, thereby making appropriate final injunctive relief ... with regard to the class as whole ...."

■ Plaintiffs allege that Gerber adulterated its baby food and then engaged in false and misleading advertising. These actions, if true, are in direct opposition to the class. Fed.R.Civ.P. 23(b)(2). Indeed, this court has held on two prior occasions that injunctive relief may be an important aspect of this litigation. *Tylka v. Gerber Prods, Co.*, 96 C 1647, 1998 WL 92167, at *6 (N.D.Ill. Feb. 18, 1998) (Opinion and Order denying Plaintiffs' Motion to Reconsider Remand for Lack of Jurisdiction) (noting that injunctive relief may be appropriate if "public health issues" arise); *Tylka v. Gerber Prods., Co.*, No. 96 C 1647, 1996 WL 341441 (N.D.Ill. June 18, 1996). Therefore, all Plaintiffs who may properly avail themselves of the ICFA and Illinois common law fraud, are similarly certified as a class to pursue the equitable relief provided in Rule 23(b)(2).[7]

Nevertheless, Gerber argues that certification under 23(b)(2) is only proper when the primary relief sought is equitable. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 255–57 (3rd Cir.), *cert. denied*, 421 U.S. 972, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Since Gerber contends that Plaintiffs' principal purpose in bringing this action is to recover money damages under 23(b)(3), certification pursuant to 23(b)(2) is unwarranted. However, the proposition cited by Gerber in *Wetzel* is not a wholesale bar to certifying class actions under both 23(b)(2) and 23(b)(3). *See generally, Nat'l Org. for Women, Inc.*, 172 F.R.D. at 351 (simultaneously certifying class pursuant to 23(b)(2) and 23(b)(3)).[8] Additionally, there

---

**6.** Counsel for Plaintiffs also claim to have been certified in at least two other class actions before the court.

**7.** The court notes that even though the class is limited to those individuals able to state claims under the ICFA and Illinois common law fraud, the court may ultimately order equitable relief which reaches a greater audience. *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979) (noting that the limitations on class size associated with 23(b)(3) do not apply directly to a class certified under 23(b)(2)). Therefore, it seems contrary to judicial economy and an unnecessary hardship upon

the court to certify a national class under 23(b)(2) when the injunctive relief sought by the Plaintiffs may still be accomplished with a more restricted class.

**8.** The court recognizes that a class action may qualify under Rule 23(b)(1), 23(b)(2), or 23(b)(3), and that it is necessary to specify the particular provision of the rule under which the class is being certified. Notice may be required to class members of a(b)(3) class to provide an opportunity to opt out. Rules 23(b)(1) and (b)(2) do not mandate such notice and an opportunity to opt out, but under the court's 23(d)(2) discretionary power, the court may order notice and permit

502

is no language in Rule 23(b) which expressly limits its remedies to either sections (1), (2), or (3) of Rule 23(b). Therefore, Plaintiffs satisfy their burden under Rule 23(b)(2).

### III.  CONCLUSION

In sum, the court finds that class certification is appropriate for all class members who may properly avail themselves of the ICFA and Illinois common law fraud. Accordingly, for the foregoing reasons, the court grants in part and denies in part Plaintiffs' Motion for Class Certification.

IT IS SO ORDERED.

opting out. *Penson v. Terminal Trans. Co.,* 634 F.2d 989, 993 (5th Cir.1981); *Williams v. Lane,* 129 F.R.D. 636, 639 n. 5 (N.D.Ill.1990) ("Rule 23(d) leaves to the discretion of the trial court the decision whether to provide notice to potential members of Rule 23(b)(2) classes.")