Joan F. POPE, as Trustee of the Bruce A. Pope Trust, and William Shearon as Trustee of the William Shearon Trust individually and on behalf of all persons similarly situated, Plaintiff,

v.

HARVARD BANCSHARES, INC., Donald Ahrens, Leonard Beetstra, Roher Lehmann, Philip J. Lehmann, William Olbrich, Bernard Papp, Anton Stricker, and Alan Yates, Defendants.

No. 06 C 988.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 16, 2006.

David J. Fish, The Collins Law Firm, Naperville, IL, for Plaintiff.

Marcos Reilly, Hinshaw & Culbertson, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEFKOW, District Judge.

This putative class action was brought by the former shareholders of a corporation who allege that the corporation's former directors breached their fiduciary duties in connection with a merger and the sale of minority shareholders' stock. Plaintiffs' motion for class certification is presently before the court, and for the reasons set forth below, it is granted in part.

1. The individual defendants are Donald Ahrens, Leonard Beetstra, Roger Lehmann, Philip J. Lehmann, William Olbrich, Bernard Papp, Anton Stricker, and Alan Yates. Pope and Shearon are residents of Florida, and the situs of their trusts is also Florida. Proposed Am. Class Action Compl. ("Class Compl."), at ¶ 1. Bancshares is

## 1. Background

Plaintiffs are former shareholders of Harvard Bancorp, Inc. ("Bancorp"), which was a holding company for the Harvard State Bank (the "Bank") in Harvard, Illinois until early 2006. There are currently two named plaintiffs: Joan F. Pope as Trustee of the Bruce A. Pope Trust ("Pope") and William Shearon as Trustee of the William Shearon Trust ("Shearon"). Pope and Shearon are represented by the Collins Law Firm, P.C. ("Collins"). Defendants are Harvard Bancshares, Inc. ("Bancshares"), the new corporation into which Bancorp merged, and individuals who were directors of Bancorp and are now directors of Bancshares (collectively, "defendants").[1]

Pope and Shearon allege that defendants breached their fiduciary duties to Bancorp and to its shareholders when they created Bancshares, provided false pretenses for the merger, sent misleading notices to shareholders announcing the merger of Bancorp into Bancshares, and offered to buy the shareholders' stock for an unfair price of $600. Shareholders that owned less than 101 shares had no choice in the matter; their stock was automatically sold.

Pope and Shearon have moved for an order certifying this case as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Dkt. No. 45. They ask the court to certify the following class:

> All persons whose shares of Harvard Bancorp, Inc. were repurchased as a result of the merger of Harvard Bancorp, Inc. and Harvard Bancshares, Inc. Excluded from the Class are the defendants, their employees, and their families.

Pls.' Mot. For Class Cert., Dkt. No 45, at 1. Pope and Shearon ask to be class representatives, and Collins asks to be class counsel. *Id.* at 1–2.

an Illinois corporation. *Id.* at ¶ 2. The individual defendants are residents of states other than Florida. Answer to Am. Compl., at ¶ 2. The alleged amount in controversy exceeds $75,000. *Id.* at 3. This court has diversity jurisdiction under 28 U.S.C. § 1332.

## 2. Class Certification Standard

■ A class action may be certified when two conditions are met. First, the movant must satisfy the four prerequisites of Federal Rule of Civil Procedure 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed.R.Civ.P. 23(a); *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993) (citation omitted); *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992). Second, the potential class must satisfy the requirements of at least one of the three subsections of Rule 23(b). Fed.R.Civ.P. 23(b); *Rosario,* 963 F.2d at 1017; *Hardin v. Harshbarger,* 814 F.Supp. 703, 706 (N.D.Ill.1993). Here, Pope and Shearon will attempt to satisfy Rule 23(b)(3), which requires a finding that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of · the controversy." Fed.R.Civ.P. 23(b)(3). Courts should liberally interpret the requirements of Rule 23, *King v. Kansas City S. Indus.,* 519 F.2d 20, 25–26 (7th Cir. 1975), but retain broad discretion when determining whether class certification is appropriate. *Keele,* 149 F.3d at 592; *Robbins v. Wolpoff & Abramson LLP,* 2006 WL 2473334, at *1 (E.D.Wis. Aug. 24, 2006).

■ The party seeking class certification bears the burden of showing that all of the requirements have been met. *Retired Chicago Police Ass'n,* 7 F.3d· at 596 (citation omitted); *Hardin,* 814 F.Supp. at 706 (citing, *inter alia, Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)). When evaluating a motion, the court accepts the allegations made in support of certification as true and does not examine the merits of the case. *Hardin,* 814 F.Supp. at 706 (citing, *inter alia, Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974)). The court will not merely rubber stamp the movant's allegations, however, but will look beneath the surface of the pleadings and independently examine the evidence in order to protect absent class members by ensuring that the requirements of Rule 23 actually are satisfied. *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 677 (7th Cir.2001); *Falcon,* 457 U.S. at 157, 160–61, 102 S.Ct. at 2370, 2372. Even if the court grants a motion for class certification, that ruling is inherently tentative, and the court retains the freedom to modify it in light of subsequent developments in the litigation. Fed.R.Civ.P. 23(c)(1)(C); *Falcon,* 457 U.S. at 160, 102 S.Ct. at 2372.

■ The Seventh Circuit has recognized the suitability of shareholder suits to class action treatment. *In re Bank One Sec. Litig./First Chicago Shareholder Claims,* 2002 WL 989454, at *2 (N.D.Ill. May 14, 2002) (citing *King v. Kansas City S. Indus.,* 519 F.2d 20, 25–26 (7th Cir.1975)). Although *Bank One* and *King* dealt with securities fraud claims, their reasoning is equally applicable to a fiduciary duty case brought by minority shareholders, like this one.

## 3. The Requirements of Rule 23(a)

### a. Numerosity

■ The first prerequisite for class certification that plaintiffs must satisfy, numerosity, requires that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a). " 'Impracticable' does not mean 'impossible,' but rather, extremely difficult and inconvenient." *Fields v. Maram,* 2004 WL 1879997, at *3 (N.D.Ill. Aug. 17, 2004) (citing *Danis v. USN Commc'ns, Inc.,* 189 F.R.D. 391, 399 (N.D.Ill.1999)). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Johnson v. Rohr–Ville Motors, Inc.,* 189 F.R.D. 363, 368 (N.D.Ill.1999) (citing *Swanson v. Am. Consumer Indus.,* 415 F.2d 1326, 1333 (7th Cir.1969)). The court is entitled to make "common-sense assumptions in determining numerosity." *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 644 (N.D.Ill.2002); *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D.Ill.1996); *see also Keele v. Wexler,* 1996 WL 124452, at *3 (N.D.Ill. Mar. 19, 1996), *aff'd,* 149 F.3d 589 (7th Cir.1998).

Approximately 125 shareholders sold their shares when Bancorp merged into Banc-

shares. Defendants' response to plaintiff's mot. to certify class ("Defendants' Response"), Ex. M, at Ex. 1. Defendants argue that the size of the class depends on how it is defined and that the court should distinguish between shareholders with less than 101 shares who were forced to sell, those with more than 101 shares who chose to sell, those with more than 101 shares who were obligated to sell by missing the deadline to convert their shares, and those who complained about the offered price at the time. Defendants' Response, at 14. As discussed below in the context of commonality and predominance, these groups are all properly included in the same class due to common questions of law and fact and the predominance of those questions over any that affect only individual class members. Therefore, even after subtracting shareholders who are defendants or relatives of defendants,[2] it is undisputed that the class would include approximately 100 people. Defendants' Response, Ex. M, at ¶ 9. Because it would be difficult and inconvenient to join 100 people as plaintiffs to this case, the court finds that the numerosity requirement has been satisfied.

### b. Commonality

The commonality requirement requires that "there must exist 'questions of law or fact common to the class.'" *Keele,* 149 F.3d at 594; Fed.R.Civ.P. 23(a)(2). It has been characterized as a "'low hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 185 (N.D.Ill.1992). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele,* 149 F.3d at 594 (quotation omitted); *Rosario,* 963 F.2d at 1017–18 (citation omitted); *see also Tylka v. Gerber Prods. Co.,* 178 F.R.D. 493, 496 (N.D.Ill.1998) (citation omitted) (noting that if at least one question of law or fact is common to the class, then commonality is satisfied). A common nucleus exists where the class members' claims hinge on the same conduct of the defendants. *Tylka,* 178 F.R.D. at 496; *Bank One,* 2002 WL 989454, at *4. An allegedly illegal communication sent to all of the proposed class members typically establishes commonality. *Keele,* 149 F.3d at 594.

Plaintiffs claim in the first count of their proposed amended class action complaint (the "class complaint") that defendants breached their fiduciary duties to Bancorp's minority shareholders.[3] This will require proof that defendants (1) had a fiduciary duty; (2) breached it; and (3) proximately caused damages to the plaintiffs as a result of that breach. *Cement–Lock v. Gas Tech. Institute,* 2005 WL 2420374, at *16 (N.D.Ill. Sept. 30, 2005) (citing *Neade v. Portes,* 739 N.E.2d 496, 502, 193 Ill.2d 433, 444, 250 Ill.Dec. 733 (2000)). The court's evaluation of the plaintiffs' claim will necessarily focus on the alleged misconduct of the defendants in conceiving of and conducting the merger, which constitutes a common nucleus of operative fact. Additionally, defendants sent written notices to the minority shareholders (one to those with more than 100 shares and another to those with 100 shares or less). Defendants' Response, Ex. L, at 76. Plaintiffs allege that these notices misrepresented

---

**2.** Defendants argue that by suggesting the exclusion of defendants and their families from the putative class, plaintiffs are inappropriately attempting to keep out people that would be hostile to their case and to create an "artifact" for the "convenience of class counsel." Defendants' Response, at 6–7. Plaintiffs' reply that this practice is common and logical is well-supported by the cases that it cites. Pls.' Reply, at 6–7, n. 7. *See, e.g., Riggin v. Rea Riggin & Sons, Inc.,* 738 N.E.2d 292, 303–04 (Ind.App.2000); *see also Rogers v. Baxter Int'l, Inc.,* 2006 WL 794734, at *14 (N.D.Ill. March 22, 2006); *In re Bank One Sec. Litig./First Chicago Shareholder Claims,* 2002 WL 989454, at *1 (N.D.Ill. May 14, 2002). The court will, however, amend the proposed exclusion for employees of the defendants, and instead exclude only any person who was an officer or

director of Bancorp or Bancshares during the class period. The court will also add specific dates to the definition in order to more clearly define the class.

**3.** Count 2 is an individual claim brought by Pope for failure to allow inspection of corporate records. Because this will not involve any issues common to all class members, the court will not certify this count for class treatment. Fed. R.Civ.P. 23(c)(4); *Dunn v. City of Chicago,* 231 F.R.D. 367, 378 (N.D.Ill.2005) (a court may certify one count or class when not certifying another). For the remainder of this opinion, the court's discussion shall apply only to count 1 of the proposed amended class action complaint.

the reasons for the merger and announced an unfair price for repurchasing their stock. Class Compl., at ¶ 13, Pls.' mem. supp. mot. class certification ("Pls.' Mem."), at 2. The presence of the common question of whether these notices were misleading also establishes commonality. *Keele,* 149 F.3d at 594.

Defendants first point out that some shareholders were forced to sell their shares, others voluntarily sold them, and others had the option to convert their shares but missed the deadline for doing so. Defendants' Response, at 4–5. Notwithstanding these factual differences, plaintiffs still share the common issue of whether defendants breached their fiduciary duties. *Keele,* 149 F.3d at 594–595; *Bank One,* 2002 WL 989454, at *4 (citing *Rosario,* 963 F.2d at 1017–18; *Beale v. EdgeMark Fin. Corp.,* 164 F.R.D. 649, 654 (N.D.Ill.1995)).

Defendants also argue that the fact that the members of the putative class owned different amounts of shares creates a conflict of interest among members of the class. This argument does not defeat commonality. In every case involving a class of shareholders, class members will almost inevitably own different numbers of shares. But courts routinely certify classes in securities cases, and each member's recovery is computed proportionately to ownership, which equalizes incentives among larger and smaller shareholders. *Bank One,* 2002 WL 989454, at *4.

**c. Typicality**

■■■■ To meet the typicality requirement, the named plaintiff's claims or defenses must be typical of the class. Fed.R.Civ.P. 23(a)(3); *Keele,* 149 F.3d at 594. The typicality requirement focuses on the class representative. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele,* 149 F.3d at 594; *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (citations omitted). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar,* 167 F.R.D. at 57. Minor factual differences between the named plaintiff's situation and the rest of the class do not necessarily undermine typicality. *De La Fuente,* 713 F.2d at 232; *Robbins,* 2006 WL 2473334, at *2. For example, the class representative is not required to have the same injury as all other class members. *Rosario,* 963 F.2d at 1018 (citing *De La Fuente,* 713 F.2d at 232). Since "commonality and typicality are closely related, a finding of one often results in a finding of the other." *McKenzie v. City of Chicago,* 175 F.R.D. 280, 286 (N.D.Ill.1997).

Pope and Shearon both had their shares repurchased as a result of the merger. Pls.' Mem. at 7. They both were paid the same per-share repurchase price as the other members of the putative class. *Id.* Additionally, Pope and Shearon are asserting the same legal theory of breach of fiduciary duty against the defendants, based on the defendants' alleged breach of fiduciary duties to the members of the class. Shearon owned only 100 shares, and therefore he was required to sell them, as were the majority of the putative class members. Defendants' Response, Ex. M. His claim is therefore typical of the claims of the putative class.

Pope had more than 100 shares, and therefore would not have been forced to sell them. Defendants' Response, Ex. M, at 2. This difference alone does not defeat her ability to satisfy the typicality requirement. *Rosario,* 963 F.2d at 1018 (citing *De La Fuente,* 713 F.2d at 232). The court does have concerns, however, regarding the fact that Mr. Newell, Pope's son-in-law and her power of attorney for the purposes of negotiating with defendants regarding her stock, Defendants' Response, Ex. B, had significant communications with the defendants during the merger that were not shared with the rest of the putative class, and also discussed a potential individual settlement for Pope. Defendants' Response, at 7, Ex. C; Pls.' Reply, at 2, n. 1. These factual differences between Pope and the typical putative class member, who presumably did not receive individual communications from the defendants regarding the merger, may be a lack of typicality between Pope's claims and the claims of the class.

**d. Adequacy**

■■■■ Adequacy requires that "the representative parties will fairly and adequately

protect the interests of the class," Fed. R.Civ.P. 23(b)(4), and that both the lead plaintiffs and their counsel will protect the "different, separate, and distinct interests" of the putative class members. *Robbins*, 2006 WL 2473334, at *2 (citing *Retired Chicago Police Ass'n*, 7 F.3d at 598). "Adequacy of representation... is perhaps the most significant of the prerequisites to a determination of class certification." *Folding Cartons v. Am. Can Co.*, 79 F.R.D. 698, 701 (N.D.Ill. 1978). It is the "key to the integrity of class action litigation, not only in pragmatic terms of the efficiency and thoroughness of the proceedings, but far more importantly in relation to the fair and just resolution of the dispute." *Id.* This is because the rights of absent class members, including their day in court, may be preclusively affected by the class action. *Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 225, 228–29 (S.D.Ind.2006). The lead plaintiff must be trustworthy enough to protect the interests of the class by working to pursue a remedy or settlement that benefits the class as much as it does himself or his counsel. *Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 471 (7th Cir.2004); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880–81 (noting that only the representative's approval is necessary for settlement, and that absent class members may not learn of inadequate representation until it is too late).

 Because the lead plaintiffs will act as fiduciaries for the absent plaintiffs, the court can examine their integrity and credibility in determining whether they are suitable representatives for the class. *Kaplan v. Pomerantz*, 132 F.R.D. 504, 508–510 (N.D.Ill. 1990). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims," *Rosario*, 963 F.2d at 1018 (citation omitted), and a plaintiff with credibility problems does have interests antagonistic to the class. *Kaplan*, 132 F.R.D. at 510. Courts have denied such plaintiffs the privilege of representing their putative classes. *Id.* at 510–511; *Folding Cartons*, 79 F.R.D. at 703–704; *Davidson*, 238 F.R.D. 225, 229–31, 233–34.

 Defendants have raised concerns in this case regarding Pope's adequacy to serve as lead plaintiff based on the credibility of her son-in-law and power of attorney, Mark Donald Newell ("Newell"). While plaintiffs disclaim Newell's influence on Pope in this case, Pls.' Reply at 7–8, their arguments are undermined by the fact that Pope granted Newell a power of attorney "to negotiate with any and all officers of Harvard Bancorp, Inc. regarding any and all stock interests in Harvard Bancorp, Inc. owned or held by Bruce A. Pope, Deceased, whether in his individual name or in the name of his trust." Defendants' Response, Ex. B. Furthermore, in her deposition, Pope was asked, "Does Mr. Newell still have the authority to act on your behalf with respect to this lawsuit?" Defendants' Response, Ex. J, at 77. She answered "Yes. He has my full confidence." *Id.* Furthermore, the court notes that Newell has been present at many depositions that have taken place thus far in this case, including Pope's, where he made comments on the record and spoke with Pope during breaks. *Id.* at 82; *see also* Defendants' Response, at Ex. L (depositions of Roger Lehmann, Douglas Fitzgerald, and Timothy M. Sullivan).

It is apparent that Newell has a significant influence on Pope's decisionmaking with regard to this case. Therefore, his credibility is relevant to her adequacy as a class representative, and because it has been brought into serious question, the court cannot grant her the privilege of serving as a class representative. Newell has been convicted in this court of willfully filing false federal income tax returns for himself and his own corporation. *United States v. Newell*, 239 F.3d 917 (7th Cir.2001). He also testified in a related case, with a grant of immunity, that he and his partners made up a false story to cover up their wrongdoing after learning that they were under investigation. *United States v. Fassnacht*, 332 F.3d 440, 450–51 (7th Cir. 2003). There is more, but this is sufficient to find that Newell is not the best choice for a fiduciary who must honestly look out for the best interests of absent class members instead of attempting to maximize his own. "All class suits create some conflict between the representative and the class; the representative and counsel may be tempted to sell out the class for benefits to themselves,"

*Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir.1991), and this is too significant a risk here.

■ Defendants also challenge Shearon's suitability as a lead plaintiff, based on an alleged lack of personal knowledge of information supporting the complaint and a lack of independence from class counsel. Defendants' Response, at 13. It is true that a class representative must have some commitment to the case, but that commitment can be demonstrated by appearing for depositions and knowing the obligations of his role; the proposed representative need not immerse himself in the facts of the case. *Rand v. Monsanto Co.*, 926 F.2d at 598–99. Shearon appeared for his deposition and appears to be aware and willing to comply with the responsibilities of serving as a lead plaintiff.

Defendants have not argued that Shearon has any claims antagonistic to those of the rest of the class, and it does not appear to the court that he has any. Shearon's family owned stock in the Harvard State Bank for 30 years. Pls.' Reply, at 11, Ex. D, at 14–15. At the time of the merger, he owned 100 shares that he was forced to sell. Defendants' Response, Ex. M. Any difference between the amount of his holdings and that of other class members who had more or less shares is not antagonistic; because any remedy will be distributed in proportion to ownership, Shearon will have an incentive to seek a remedy that is beneficial to the class as a whole. Furthermore, he is an experienced businessman who understands the basics of corporate mergers and forms, and is also currently serving as an elected official. Pls.' Reply, at 11. He has reviewed the pleadings and understands the general nature of the class claims. Pls.' Reply, at 11–12. These facts demonstrate that he is likely to conscientiously defend the rights of the class members in this case, and therefore, the court finds that he is an appropriate class representative. *See, e.g., Bank One*, 2002 WL 989454, at *6–*7. Plaintiffs may wish to propose additional class representatives, and may make an appropriate motion to do so.

Finally, the court finds that Collins, including Shawn Collins and David Fish, can adequately represent the interests of the proposed class, and may serve as class counsel in this case. Defendants do not dispute the firm's competence independently from the proposed named plaintiffs', and plaintiffs have shown that Collins has significant experience representing plaintiffs in class action litigation (including several complex class cases in this court over the past several years). See Pls.' Mem., at 7–8. The fact that attorneys have been found adequate in other cases "is persuasive evidence that they will be adequate again," absent persuasive evidence to the contrary. *Gomez v. Illinois State Bd. of Ed.*, 117 F.R.D. 394, 401 (N.D.Ill. 1987).

### 4. The Requirements of Rule 23(b)(3)

■ As noted above, plaintiffs seeks certification under Rule 23(b)(3). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). "Although related to Rule 23(a)'s commonality requirement, 'the predominance inquiry is far more demanding...' To satisfy this aspect of Rule 23(b)(3), 'the plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims.' " *Pavone v. Aegis Lending Corp.*, 2006 WL 2536632, at *4 (N.D.Ill. Aug. 31, 2006) (citing, *inter alia, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997)). Plaintiffs' claim of breach of fiduciary duty primarily involves an inquiry into the conduct of the defendants, an issue that is common to all putative class members. The minority shareholders all received substantially similar communications, and the court will examine those in determining the defendants' liability. *Cf. Gesell v. Commonwealth Edison Co.*, 216 F.R.D. 616, 625–626 (C.D.Ill.2003). Furthermore, the putative plaintiffs all allegedly suffered damages as a result of defendants' conduct and in proportion to the number of shares that they owned, which is easy to compute. Pls.' Reply at 5–6. These are

the central issues of the case and will predominate over any concerning individual class members. Therefore, the predominance requirement is satisfied.

Finally, in considering the satisfaction of the superiority requirement, the court will look at "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b). There does not appear to be any conflicting interest in controlling the litigation on the part of other members in the class, and the court knows of no other litigation that has already been commenced regarding this controversy. Resolving all of the putative class members' claims in one action in this jurisdiction, where the defendants are located, would be the most efficient way to resolve the plaintiffs' claims and would avoid any potentially conflicting orders on the same facts. The difficulties likely to be encountered in managing this class action are minor, and are preferable to the management of multiple individual suits. Although the individual plaintiffs' damages in this case may be higher than in a typical shareholder suit, Defendants' Response, at 14, they are not likely to be high enough to justify the expenses of litigating on an individual basis.

### 5. Order

For the reasons set forth above, the court grants plaintiffs' motion [# 45] in part and hereby certifies the following class as to plaintiffs' claim for breach of fiduciary duty:

> All persons whose shares of Harvard Bancorp, Inc. were repurchased between October 14, 2005 and January 15, 2006 as a result of the merger of Harvard Bancorp, Inc. and Harvard Bancshares, Inc. Excluded from the class are the defendants, their officers, directors, and families.

The class representative will be William Shearon, as trustee of the William Shearon

Trust, and class counsel will be Shawn Collins and David Fish of the Collins Law Firm, P.C. The motion is otherwise denied. Plaintiffs are directed to file an amended class action complaint that is consistent with this opinion on or before November 30, 2006. If plaintiffs wish to propose additional class representatives, they have leave to make an appropriate motion to do so. The case will be called in court for a status hearing on December 5th, 2006 at 9:30 A.M.