Elliott v. KB Home N.C., Inc., 2017 NCBC 37.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

MARK ELLIOTT, TOR AND
MICHELLE GABRIELSON,
MICHIHIRO AND YOKO
KASHIMA, FAIRWAY 13 PROPS.,
LLC, on behalf of themselves and all
others similarly situated,

          Plaintiffs,

v.

KB HOME NORTH CAROLINA,
INC. AND KB HOME RALEIGH-
DURHAM, INC.,

          Defendants,

and

KB HOME RALEIGH-DURHAM,
INC.,

          Third-Party Plaintiff,

v.

STOCK BUILDING SUPPLY, LLC,

          Third-Party Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 21190

ORDER APPROVING FINAL
SETTLEMENT AND
AWARDING ATTORNEYS' FEES

THIS MATTER comes before the Court on Plaintiffs' Motion for Final Approval of Settlement ("Approval Motion") and Unopposed Motion for Award of Attorneys' Fees and Expenses and Service Awards ("Fee Motion") (collectively, "Motions") pursuant to Rule 23 of the North Carolina Rules of Civil Procedure ("Rule(s)"). Both Motions are unopposed by Defendant KB Home Raleigh-Durham Inc. ("KB Home"), and after appropriate notice to class members was provided as required by the Court's Order Granting Preliminary Approval of Settlement, the Court received only one objection to the settlement conditionally entered on January 4, 2017 ("Settlement").

On April 11, 2017, the Court held a hearing on the Motions and is satisfied as to the fairness, reasonableness, and adequacy of the Settlement, and the fairness and reasonableness of the fees, expenses, and service awards provided herein. Therefore, having considered the Motions, the supporting Memorandums, materials filed with the Motion, discussions with counsel during the hearing held on April 11, 2017, and other appropriate matters of record, concludes that good cause exists to grant the Motions. Therefore, the Court GRANTS the Final Approval Motion, CERTIFIES the classes as defined below for settlement purposes only, APPROVES the Settlement, and GRANTS the Fee Motion.

*Whitfield Bryson & Mason LLP, by Daniel K. Bryson, Gary E. Mason, and Scott C. Harris, for Plaintiffs.*

*Bradley Arant Boult Cummings LLP, by Michael W. Knapp and Brian M. Rowlson, for Defendant KB Home Raleigh-Durham Inc.*

*Hunton & Williams LLP by A. Todd Brown, for Third Party Defendant Stock Building Supply, LLC.*

*Background*

1.　Plaintiffs in these actions are current and former owners of homes constructed by KB Home in the Twin Lakes and Wynbrooke subdivisions in Cary, North Carolina.

2.　On January 31, 2008, Plaintiffs Mark Elliott, Tor and Michelle Gabrielson, and Michihiro and Yoko Kashima filed a warranty claim with KB Home because their homes did not have a weather-resistant barrier ("WRB") beneath the HardiePlank. The parties were unable to resolve Plaintiffs' warranty claim, and on December 5, 2008, Plaintiffs filed a class action lawsuit in Wake County Superior

Court against KB Home North Carolina Inc., and KB Home alleging that KB Home violated the applicable building codes and breached their respective contracts by not installing a WRB beneath the HardiePlank siding resulting in damages from water intrusion into the walls of the homes.

3.     After Judge W. Osmond Smith, III, denied KB Home's motion to dismiss but granted KB Home North Carolina Inc.'s motion to dismiss, KB Home filed a third party complaint against Stock Building Supply, LLC ("Stock"), who KB Home claimed installed the exterior siding without a WRB on Plaintiffs' homes. Stock moved for designation of this case as a complex business case, which was granted on June 17, 2010, and assigned to the Honorable John R. Jolly, Jr.

4.     On February 27, 2012, Judge Jolly issued an order certifying a class of homeowners in North Carolina who own a home constructed by KB Home without a WRB installed under the exterior siding. A Notice of Class Action was mailed to all potential class members on or before March 15, 2012.

5.     Following the February 27 Class Certification Order, KB Home initiated a series of appeals during which stayed the case. Then, following an unsuccessful mediation, the Court lifted the stay on June 5, 2015.

6.     Due to changes in circumstances amongst some of the class members following the February 27, 2012 Order, this Court modified the class definition on September 25, 2015, to include a subclass of "Post-Notice Sellers," which included homeowners who owned a home constructed by KB Home without a WRB as of March 15, 2012, but who subsequently sold it. The Court ordered Plaintiffs to amend their

complaint to add a subclass representative. Plaintiffs subsequently amended their complaint to add Fairway 13 Properties, LLC, as their subclass representative.

7. On December 6, 2016, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement, Certification of Settlement Classes, Approval of Class Notice and Scheduling of Final Approval Hearing. After a discussions with counsel for all parties, this Court entered its Order Granting Preliminary Approval of Settlement, Certifying Classes for Purposes of Settlement, Directing Notice to the Class, and Scheduling Final Approval Hearing ("Preliminary Approval") and set a hearing to consider certifying the classes, final approval of the settlement on April 11, 2017, and for determining attorneys' fees, expenses, and service awards.

8. Plaintiffs filed the Approval Motion and the Fee Motion, as well as supporting material, on March 28, 2017. This Court held a hearing on April 11, 2017.

9. In evaluating whether to finally approve a class action settlement, courts follow a two step process that first examines whether the proposed class satisfies North Carolina Rule of Civil Procedure 23, and second whether the settlement is "fair, reasonable, and adequate." *Ehrenhaus v. Baker*, 216 N.C. App. 59, 73, 717 S.E.2d 9, 19 (2011).

### Class Certification

10. The Court first turns to whether the Settlement Classes should be finally certified. Rule 23 of the North Carolina Rules of Civil Procedure governs class actions. There are three basic requirements to establish class certification under Rule 23:

First, parties seeking to employ the class action procedure pursuant to our Rule 23 must establish the existence of a class. A class exists when each of the members has an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members. The party seeking to bring a class action also bears the burden of demonstrating the existence of other prerequisites: (1) the named representatives must establish that they will fairly and adequately represent the interests of all members of the class; (2) there must be no conflict of interest between the named representatives and members of the class; (3) the named representatives must have a genuine personal interest, not a mere technical interest, in the outcome of the case; (4) class representatives within this jurisdiction will adequately represent members outside the state; (5) class members are so numerous that it is impractical to bring them all before the court; and (6) adequate notice must be given to all members of the class.

*Beroth Oil Co. v. N.C. Dep't of Transp.*, 367 N.C. 333, 337, 757 S.E.2d 466, 470 (2014) (citations omitted). "When all the prerequisites are met, it is left to the trial court's discretion whether a class action is superior to other available methods for the adjudication of the controversy." *Id.*

11.     This is not the first time the Court has considered whether Plaintiffs can maintain their action as a class. On February 27, 2012, this Court entered an order certifying a class of persons in North Carolina who owned a home built by KB Home without a WRB underneath the HardiePlank exterior siding. On September 25, 2015, this Court confirmed the certification of the class but created a subclass of former homeowners to address a change in circumstances—a change in home ownership—from when the class certification order was entered.

12. The parties proposed two Settlement Classes that largely mirror the two classes this Court certified on February 27, 2012, and September 25, 2015, with only minor changes. These changes include clarifying that homeowners who transferred ownership of a home but did not sell it, such as in the case of divorce, marriage, or estate planning, retain their class membership, and adding a list of Settlement Class members. Neither of these changes constitute a significant change to the previously approved class definitions.

13. Since this Court entered an order preliminarily approving the settlement and approving notice to be sent to the classes, the parties have informed the Court that some individuals have provided information that fit the definition of one of the class definitions yet do not appear on the list of Settlement Class members. Accordingly, at the conclusion of the claims period, the parties will execute an Addendum to Stipulation of Settlement and Release that provides a mechanism for these individuals to benefit from the Settlement as class members once it is confirmed that these homes do not have a WRB.

14. The Court finds that the Settlement Classes meet the prerequisites under Rule 23. The Settlement Class Representatives' claims are typical of the claims of the respective Settlement Class members. The representatives for Settlement Class A, Mark Elliott, the Gabrielson's, and the Kashmina's, all have the same interests in repairing their homes and their claims are based on the same legal injury—that KB Home failed to install a WRB. Likewise, Fairway 13 Properties, LLC,

shares the same injury as Settlement Class B members of a decrease in sale value of its home stemming from KB Home's failure to install a WRB.

15. There are questions of fact and law that are common to all Settlement Class members in the defined period, and these predominate over any potential individual claim or issues that might be asserted by the Settlement Class Representatives. The common questions of fact involved in this matter included whether KB Home failed to install a WRB underneath the HardiePlank exterior siding and the property and/or economic damages that resulted therefrom, a core issue of fact that was common to all Settlement Class A and B members alike. The common legal issue, whether KB Home failed to comply with the North Carolina Building Code by not installing a WRB, arises out of this common factual issue. This single core factual inquiry and core legal issue binds the Settlement Classes together and makes them sufficiently cohesive. Because these issues predominate over any individual issue or interest of the Settlement Class Representatives, and for the other reasons previously articulated by the Court regarding its previous class certification orders, two proper classes exist.

16. Additionally, the Court concludes that the Settlement Class Representatives have no conflict of interest with the Settlement Classes, and that they, as current and former homeowners, have a genuine personal interest in the outcome of the case and that interest is shared by all class members. The Settlement Class Representatives have shown a commitment to vigorously prosecute this action by sitting for depositions, complying with document requests, and negotiating

settlement terms with Settlement Class Counsel. Accordingly, the Settlement Class Representatives fairly and adequately represent the interests of the respective Settlement Class A and B members.

17.     The Settlement Classes now consist of owners and former owners of approximately 313 homes. This Court concludes that the class is so numerous that it is impractical to join all members. *See, e.g.*, *Pope v. Harvard Banschares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006) ("Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met").

18.     Because Plaintiffs have satisfied all class action prerequisites, this Court has the discretion to determine whether a class action is superior to all other methods for adjudication of this controversy. *Beroth Oil Co.*, 367 N.C. at 337, 757 S.E.2d at 470. After a thorough and careful review of the Approval Motion, the affidavits and evidence provided in support of the Approval Motion, the Court concludes, in its discretion, that class certification is proper in this matter.

19.     Accordingly, the Court finally approves and certifies the following class as Settlement Class A:

> All persons in the State of North Carolina who owned a home on March 15, 2012 and still owned the home as of November 10, 2016, in the Twin Lakes Homes or Wynbrooke Homes developments in Cary, North Carolina constructed by Defendant KB Home without a weather-restrictive barrier behind the exterior veneer of HardiePlank cement fiber lap siding and are listed in Amended Exhibit C of the Settlement Agreement. Excluded from the Class are: (a) any judge or magistrate presiding over this action and members of their families; (b) any Defendant and/or Third-Party Defendant and any entity in which any Defendant and/or Third-Party

Defendant have a controlling interest or which has a controlling interest in any Defendant and/or Third-Party Defendant and its legal representatives, assigns and successors of any Defendant and/or Third-Party Defendant; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

20. Likewise, the Court finally approves and certifies the following class as Settlement Class B:

All persons in the State of North Carolina who owned a home on March 15, 2012, in the Twin Lakes Homes or Wynbrooke Homes developments in Cary, North Carolina constructed by Defendant KB Home without a weather-restrictive barrier behind the exterior veneer of HardiePlank cement fiber lap siding but who sold or otherwise transferred their ownership interest the home after March 15, 2012, do not qualify as a Class A member and are listed in Amended Exhibit C of the Settlement Agreement. Excluded from the Class are: (a) any judge or magistrate presiding over this action and members of their families; (b) any Defendant and/or Third-Party Defendant and any entity in which any Defendant and/or Third-Party Defendant have a controlling interest or which has a controlling interest in any Defendant and/or Third-Party Defendant and its legal representatives, assigns and successors of any Defendant and/or Third-Party Defendant; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

21. Pursuant to the parties' Addendum to Stipulation of Settlement Agreement and subject to a confirmatory inspection, Amended Exhibit C to the Settlement Agreement is deemed to include those individuals listed on Exhibit 1 of the Addendum to Stipulation of Settlement Agreement.

*Final Approval of Settlement*

22. The Court next looks at the Settlement to determine whether the Settlement is "fair, reasonable, and adequate." *Ehrenhaus*, 216 N.C. App. at 73, 717 S.E.2d at 19. The burden of showing that the Settlement satisfies this standard rests on Plaintiffs. *Id.* The determination of whether Plaintiffs have satisfied this burden rests in the trial court's sound discretion. *Id.*

23. While there are a variety of factors used to evaluate a settlement, the court of appeals has identified two key factors in determining whether to approve a proposed settlement of a class action: "the first is the likelihood the class will prevail should litigation go forward and the potential spoils of victory, balanced against benefits to the class offered in the settlement." *Id.* at 74, 717 S.E.2d at 20. The second factor "is the class's reaction to the settlement." *Id.*

24. As to the first factor, this Court notes that Plaintiffs obtained rulings in this action that support their likelihood of success if this action were to go to trial. These rulings include the February 27, 2012 Order that certified a class of homeowners, the September 25, 2015 Order that maintained the class but created a separate subclass, and the March 23, 2016 Order that found that KB Home's installation of HardiePlank siding without a WRB was not reviewed and approved by the Town of Cary Code Enforcement Official as required by Section 205.1 of the North Carolina Administrative Code.

25. Notwithstanding these rulings, Plaintiffs would be faced with numerous risks that threatened the classes if this action were to proceed. For example, the current homeowner class membership decreases, on average, by twenty-six homes

per year. *See* September 25, 2015 Order at ¶ 23 n. 30. Thus, the current homeowner class could have been diminished the longer the case proceeded, whether by trial or subsequent appeals. Likewise, at the time the parties executed the Settlement, KB Home had a pending motion to disqualify the former homeowners' only class representative, Fairway 13 Properties, LLC. Plaintiffs noted that the potential disqualification of this class representative could threaten the existence of the sub-class. KB Home could win at trial or appeal any adverse judgment, and could argue that evidence developed at trial should lead the Court to decertify the class. Any appeal could take years and would have a necessarily uncertain outcome.

26. Balanced against this background and these risks are the benefits offered to the class in the settlement. Under the settlement, the current homeowner class ("Settlement Class A") are offered a choice between one of two benefits. First, Settlement Class A members may select a lump sum cash benefit with a range from $6,500 to $17,000 based on the original square footage of their home. Second, Settlement Class A members may instead opt to apply for repairs to their home. Under the repair option, Settlement Class A members can qualify to receive repairs to their home that include the removal of the current HardiePlank siding, installation of a WRB, and installation of new HardiePlank siding. In order to qualify for the repair benefit, Settlement Class A members must pass a Neutral Testing Protocol, which was developed by experts retained by Plaintiffs and KB Home but without interference from the parties' counsel. Settlement Class A members who apply, but do not qualify for, the repair option will receive the lump sum cash benefit they

otherwise qualified for less $2,000 which compensates for the cost of the testing procedure and potentially increased administrative costs to KB Home.

27. Similarly, the former homeowner class ("Settlement Class B") are offered a choice between one of two benefits. Settlement Class B members may chose a lump sum cash benefit of $3,250. Alternatively, Settlement Class B members may choose to receive the actual documented decrease in sale value of their homes up to $12,000. Settlement Class B members who select this second option are required to submit contemporaneous evidence of a price decrease that was sought and obtained related to a lack of WRB in order to qualify for this option. Finally, the benefits available under this second option are limited to what Settlement Class B members could receive based upon the original square footage of their home had they been a Settlement Class A member.

28. The benefits available to the Settlement Classes are in line with the damages they would receive if Plaintiffs were to proceed to a successful litigated result. Settlement Class A members would generally be entitled to the cost to repair their homes if they were successful at trial. The Settlement provides these members with most, if not all, of what they could receive by providing the means to repair their homes. Settlement Class B members would generally be entitled to the amount their homes decreased in sale value due to the absence of a WRB. Likewise, the Settlement provides these members with a guaranteed amount of compensation and the option to increase their compensation if they can specifically establish their damages.

29.     The Settlement received only one timely objection out of approximately three hundred Settlement Class members. The objector questioned the adequacy of the settlement benefits and the testing procedure used under the repair option for Settlement Class A members. As to the adequacy of the settlement benefits, the Court notes that the Settlement was negotiated by adverse parties engaged in litigation for over 8 years and was the product of compromise. The benefits offered under the Settlement fall well within the range of reasonableness. As to the testing procedure, the Court has reviewed the Neutral Testing Protocol and finds that it is the product of knowledgeable and capable engineers, and that it fairly accounts for any changes in the weather that may affect the testing procedure. As such, the Court finds that the lone objection is without merit.

30.     Ultimately, after thorough consideration of the nature and strength of Plaintiffs' claims, the potential defenses they faced, and the impact that prolonged litigation has already had and likely will continue to have on class membership, the Court concludes, in its discretion, that the Settlement is fair, reasonable and should be approved.

*Attorneys' Fees and Reimbursement of Expenses*

31.     Plaintiffs also move the Court to approve their request for an award of $1,925,000 in attorneys' fees and reimbursement of expenses. The Settlement Agreement provides that "Class Counsel shall be entitled to apply to the Court for an award of Attorneys' Fees and Expenses in a total amount not to exceed $1,925,000.00 and that KB Home will not object to any application by Class Counsel for an award

of Attorneys' Fees and Expenses that does not exceed that total amount." The request is comprised of $1,776,506.39 in attorneys' fees and $148,493.61 in out of pocket expenses. Additionally, Plaintiffs request that each set of homeowners Settlement Class Representatives receive $8,000 service award for a total of $32,000. The Fee Motion is not opposed by KB Home. The settlement of this action is not contingent on the award of attorneys' fees to Settlement Class Counsel, and Settlement Class members are not being asked to pay any of the fees or expenses. Settlement Class Counsel submitted an affidavit attesting to the hours expended, billing rates, and costs incurred.

32. While a court may not modify a contractual attorneys' fees arrangement reached in a settlement of a Rule 23 class action, it nevertheless must review the fees sought for reasonableness and must approve any fees paid by way of settlement. *See Ehrenhaus*, 216 N.C. App. at 74, 717 S.E.2d at 33 ("While any 'compromise' in a class action must be reviewed by a court, a court cannot modify a purely contractual settlement."). Here, the parties agreed that Plaintiffs could apply to the Court for an award of attorneys' fees and reimbursement of expenses up to $1,925,000. The determination of the amount of attorneys' fees to be awarded is in the sound discretion of the Court. *G.E. Betz, Inc. v. Conrad*, 231 N.C. App. 214, 242, 752 S.E.2d 634, 654 (2013). Accordingly, the issue before the Court is whether Plaintiffs' counsel's request for $1,925,000 in both fees and reimbursement of expenses is reasonable.

33.     The criteria for examining the reasonableness of attorneys' fees was considered in *Ehrenhaus*. In *Ehrenhaus*, the Court of Appeals held that the reasonableness of attorneys' fees is governed by Rule 1.5 of the Revised Rules of Professional Conduct of the North Carolina State Bar ("RPC"). 216 N.C. App. at 96, 717 S.E.2d at 33. RPC 1.5 provides that "[a] lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee or collect a clearly excessive amount for expenses." *Id.* The factors to be utilized when determining whether a fee is clearly excessive include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Ehrenhaus*, 216 N.C. App. at 96–97, 717 S.E.2d at 33–34.

34.     The Fee Motion is unopposed, and Plaintiffs have provided sufficient information and evidence to establish the reasonableness of their fee request under the RPC 1.5 factors. Settlement Class Counsel has provided sufficient evidence of the time and labor required to litigate the case.

35.     Settlement Class Counsel and their previous firms collectively worked over 6,400 hours and anticipate working an additional 100–200 hours in effectuating the Settlement and assisting Settlement Class members in receiving the settlement

benefits. Settlement Class Counsel's current hour total is composed of 5,267 hours of attorney time, and 1,229 hours of paralegal time.

36. Settlement Class Counsel established their experience, skill, and ability to successfully conduct complex litigation. Settlement Class Counsel represented the Settlement Class Representatives for a span of over eight years, during which they successfully protected the Settlement Classes from de-certification and individual arbitrations. The skill and labor required to litigate this action over eight years and through several rounds of appeals, and the fact that essentially one firm[1] performed the work, also favorably weighs in Settlement Class Counsel's favor.

37. Further, Whitfield Bryson & Mason partners Daniel K. Bryson, Gary E. Mason, and Scott C. Harris each have decades of experience litigating construction product defect cases and construction defect cases on an individual, multi-family, and class basis. Mr. Bryson is one of the nation's most respected and experienced attorneys in these areas and, over his 28 year career, has successfully represented thousands of owners in a wide variety of defective construction product suits, class actions, multi-district litigation ("MDLs"), and various mass torts. Mr. Bryson has also been lead, co-lead or a steering committee member in a number of successful MDLs and class actions such as *In re Mi Windows & Doors Prods. Liab. Litig.*, No. 2:12-mn-00001-DCN; MDL No. 2333 (D.S.C.); *In re Chinese Manufactured Drywall Prods. Liab. Litig., MDL NO. 2047 SECTION: L; 09-6072; 09-7393; 10-688; 10-792; 10-929; 10-930; 10-931; 10-1420; 10-1693; 10-1828 (E.D. La.); In Re: Elk Cross*

---

[1]Mr. Daniel Bryson, Mr. Gary Mason, and Mr. Scott Harris, left their previous firms in October 2011 and formed their current firm on or about January 1, 2012.

*Timbers Decking Marketing, Sales Case Practices and Products Liability Litigation*, MDL Docket No. 2577, No. 15-cv-0018 (JLL)(JAD) (D.N.J.); and, *Smith v. Floor & Decor Outlets of America, Inc.*, 1:15-cv-4316 (N.D. Ga.). Mr. Mason has previously co-chaired the American Association of Justice ("AAJ") Class Action Litigation Group and focuses his practice on consumer class actions and mass torts. Mr. Bryson is the past chair of the Construction Law Section of the North Carolina Bar Association. Mr. Mason has served as lead counsel or class counsel in numerous defective construction material class actions, including those involving FRT plywood, polybutylene pipe, CCA wood, HTPV pipe, EIFS, Entran II and ACR concrete. In addition, Mr. Harris has also secured substantial verdicts and settlements in a variety of cases, including a multi-million dollar verdict in favor of homeowners for a developer's unfair and deceptive advertising and shoddy road construction, securing a million dollar verdict for homeowners whose home was built on improperly compacted soil, and has successfully represented condominium owners in various construction defect cases in North Carolina, Florida, and Mississippi. Currently, Mr. Harris is on the Plaintiffs' Steering Committee for owners of allegedly defective decking products, *In Re: Elk Cross Timbers Decking Marketing, Sales Case Practices and Products Liability Litigation*, MDL Docket No. 2577, No. 15-cv-0018 (JLL)(JAD) (D.N.J.) as well as on the Plaintiffs' Steering Committee in *Heber et al. v. Toyota Motor Sales, USA, Inc.,* Case No.: 8:16-cv-01525-AG-JCG (C.D. Ca.). Due to their expertise in complex construction related litigation and class actions, Settlement

Class Counsel was able to secure a level of compensation to the classes that is quite extraordinary.

38. Another factor to review in assessing an award of attorneys' fees in North Carolina is to determine whether it is fair and reasonable in view of "community rates in the geographic area of the litigation." *G.E. Betz*, Inc., 231 N.C. App. at 244, 752 S.E.2d at 655. In this matter, Settlement Class Counsel have proposed rates of $500 per hour for partners, $250 per hour for associates, and $125 an hour for paralegals[2] in requesting $1,776,506.39 for over 6400 hours of work performed by partners, paralegals and associates for eight years of work, including attending hearings, conducting and preparing for depositions across the country, responding to discovery and responding to dozens of briefs in the trial court as well as in the appellate courts.

39. With these rates, Settlement Class Counsel generated attorneys' fees of over $1,986,301.25 and are therefore reducing their fees for this case. Settlement Class Counsel's requested fees of $1,776,506.39 reflects a loss of $209,794.86 from

---

[2]Settlement Class Counsel notes that several of its attorneys are based out of Washington D.C. and thus have a higher billing rate than those typically charged in North Carolina. Further, rates of $500 per hour for partners and $250 per hour for associates represents a reduced hourly rate than those awarded to Settlement Class Counsel in other construction product class action settlements. *See, e.g., Smith v. Floor & Decor Outlets of America, Inc.*, 1:15-cv-4316 (N.D. Ga.) (ECF Nos. 67, 69) (awarding attorneys' fees at rates of $775 per hour for partners and $375 per hour for associates); *In re Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation*, 15-0018, MDL No. 2577 (D.N.J.) (ECF Nos. 117) (approving attorneys' fees at rates of $725 and $625 per hour for partners and $375 per hour for associates); *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, *10, 2015 WL 4487734 (D.S.C. July 23, 2015) (approving a rate of $600 for partners, $300 for associates, and $125).

Settlement Class Counsel's lodestar time when calculated under previously recognized North Carolina rates.

40. With 5,267 attorney hours in this matter, Settlement Class Counsel's requested fees of $1,776,506.39 yields an implied average attorney rate of $337.28.[3] *See e.g., Corwin v. British Am. Tobacco PLC*, 2016 NCBC LEXIS 14, at \*15 (N.C. Super. Ct. Feb. 17, 2016) (concluding that fees yielding "an implied average hourly rate of $325.04" to be "reasonable, and clearly not an excessive rate"); *see also Nakatsukasa v. Furiex Pharms. Inc.,* 2015 NCBC LEXIS 71, at \*24 (N.C. Super. Ct. July 1, 2015) (finding "rates of approximately $300–$550 per hour [as] typical of the fees charged for this type of work in Wake County, North Carolina").

41. Therefore, after carefully reviewing the foregoing, the Court finds, in its discretion, that $1,776,506.39 is a reasonable attorney fee in this case.

42. Plaintiffs' counsel requested reimbursement of expenses of $148,493.61 are also reasonable under the circumstances and the Court, in its discretion, awards the full amount of these expenses.

43. Accordingly, the Court concludes that Plaintiffs should be awarded $1,925,000 in attorneys' fees and reimbursement of expenses.

44. Further, this Court finds, in its discretion, that $8,000 for each set of Settlement Class Representatives up to $32,000 in service awards is reasonable for the Settlement Class Representatives' time and dedication to the Settlement Classes.

THEREFORE, IT IS HEREBY ORDERED THAT:

---

[3] This implied average attorney rate is excluding the 1,229 hours of paralegal time that were necessary for assisting in the resolution of this matter.

45.     Unless otherwise defined herein, all defined terms shall have the meanings as set forth in the Settlement Agreement.

46.     The Settlement Notice has been given to the Settlement Classes pursuant to and in the manner directed by the Order Granting Preliminary Approval, proof of the mailing of the Settlement Notice has been filed with the Court and full opportunity to be heard has been offered to all parties to the Action, the Settlement Classes and persons in interest. The form and manner of the Settlement Notice is hereby determined to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of North Carolina Rule of Civil Procedure 23, due process and applicable law, and it is further determined that all members of the Settlement Classes are bound by the Order and Final Judgment herein.

47.     Based on the record of the Action, the Court expressly and conclusively finds, pursuant to North Carolina Rule of Civil Procedure 23, as follows:

a.   that (i) the Settlement Classes, as defined above, are so numerous that separate joinder of all members is impracticable, (ii) there are questions of law and fact common to the Settlement Classes, (iii) the claims of the Settlement Class Representatives are typical of the claims of the Settlement Classes, and (iv) the Settlement Class Representatives and their counsel have fairly and adequately protected the interests of the Settlement Classes; and

b. that the requirements of North Carolina Rule of Civil Procedure 23 have been satisfied;

48. The Action is finally certified as a class action, pursuant to North Carolina Rule of Civil Procedure 23.

49. Pursuant to North Carolina Rule of Civil Procedure 23, Plaintiffs Mark Elliott, Tor and Michelle Gabrielson, Michihiro and Yoko Kashima, and Fairway 13 Properties, LLC, are finally certified as the Settlement Class Representatives. Daniel K. Bryson, Gary E. Mason, and Scott C. Harris of Whitfield Bryson & Mason LLP is finally certified as Settlement Class Counsel.

50. The Court finds, in its discretion, that the Settlement Agreement and the Settlement Notice are fair, reasonable, adequate, and in the best interests of the Settlement Classes, and are hereby approved pursuant to North Carolina Rule of Civil Procedure 23. The parties are hereby authorized and directed to comply with and to consummate the Settlement Agreement in accordance with the terms and provisions set forth in the Settlement Agreement, and the Clerk of Court is directed to enter and docket this Order and Final Judgment in the Actions.

51. This Order and Final Judgment shall not constitute any evidence or admission by any Party.

52. Plaintiffs and the other members of the Settlement Classes who did not timely and validly exclude themselves in accordance with the procedures set forth in the Settlement Notice, on behalf of themselves and on behalf of their heirs, guardians, executors, administrators, predecessors, successors and assigns, as well as any

person accepting benefits under the Settlement Agreement are deemed to have as set forth in the Settlement Agreement fully, finally and forever released, remised, relinquished, acquitted, and forever discharged each and all of the Released Parties of and from, and shall not now or hereafter institute, maintain, or assert on their own behalf, on behalf of the Settlement Classes or on behalf of any other person or entity, any claims, actions, causes of action, suits, rights, debts, obligations, reckonings, contracts, agreements, executions, promises, damages, liens, judgments and demands of whatever kind, type or nature whatsoever, both at law and in equity, whether past, present or future, mature or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, whether based on federal, state or local law, statute, ordinance, regulation, code (including but not limited to building code), contract, common law, or any other source, or any claim that Plaintiffs or Settlement Class members had, or may have had against the Released Parties that were or reasonably could have been alleged by them or on their behalf in the Action or in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising out of or relating to the failure to install a weather-resistant barrier behind the exterior cladding during the construction of Class members' homes by the Released parties from 2005 through 2007 or any other issues with their home that were or reasonably could have been discovered and/or alleged in the Action, including, but without in any way limiting the generality of the foregoing, the claims alleged in the Action, and any claims for breach of contract,

breach of express or implied warranty, tort, or statutory violations arising from, or directly or indirectly, or in any way whatsoever, pertaining to or relating to the construction of Plaintiffs' homes by the Released Parties from 2005 through 2007. Provided, however, that the Released Claims do not include personal injury claims, claims against those performing Repairs, claims arising out of or relating to the Repairs, and any claims that have not yet expired under the terms of the KB Home New Home Limited Warranty Agreement, if any, as of the Effective Date.

53.     This Release covers by example and without limitation, any and all claims for damages, equitable relief, attorneys' fees, costs, expenses, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, expenses and/or disbursements incurred by Settlement Class Counsel, or by Settlement Class Representatives or by the Settlement Class members regarding Released Claims for which any of the Released Parties might otherwise be claimed liable.

54.     All Settlement Class members who did not timely and validly exclude themselves shall be permanently barred and enjoined from hereafter instituting, participating in, prosecuting or maintaining, either directly or indirectly, on their own behalf, or on behalf of the Settlement Classes or any other Settlement Class Member, person or entity, any action or proceeding of any kind asserting any of the Released Claims.

55.     The Parties shall be deemed to have agreed that the release described in the Settlement Agreement will be and may be raised as a complete defense to and

will preclude any action or proceeding based on the claims released by and through the Settlement Agreement.

56. The release contemplated by the Settlement Agreement extend to claims that the parties granting the release do not know or suspect to exist at the time of the release, including, without limitation, claims which if known, might have affected the Releasing Parties' decision to grant the release. Plaintiffs, each member of the Settlement Classes, KB Home and its stockholders shall be deemed to relinquish, to the extent applicable, and to the full extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides:

> [A] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

57. Settlement Class Counsel is hereby awarded attorneys' fees and reimbursement of expenses in the amount of $1,925,000 from KB Home, which amount the Court finds, in its discretion, to be fair and reasonable in this case and which shall be paid to Plaintiffs' counsel in accordance with the terms of the Settlement Agreement. The Court also finds to be fair and reasonable service awards of $8,000 each to the Settlement Class Representatives for a total of $32,000.

58. Plaintiffs and Settlement Class Members, and any of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, are hereby individually and severally permanently barred and enjoined from commencing,

prosecuting, instigating or in any way participating in the commencement or prosecution of any action asserting any Settled Claims, either directly, representatively, derivatively or in any other capacity, against any of the Released Persons.

59. Without affecting the finality of this Order and Final Judgment, jurisdiction is hereby retained by this Court for the purpose of enforcing, protecting and implementing the Stipulation and the terms of this Order and Final Judgment, including the resolution of any disputes arising out of the Stipulation or Settlement, and for the entry of such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement and this Order and Final Judgment.

60. This Order and Final Judgment does not affect KB Home's third party claims against Stock Building Supply LLC, as these claims were not the subject of the Settlement.

This the 17th day of April, 2017.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
 for Complex Business Cases